DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 9644. Department One. June 10, 1912.]

EQUITABLE SAVINGS & LOAN ASSOCIATION, *Appellant*, v.
SUSAN J. BARNES *et al.,· Respondents.*[1]

INTEREST — RATE — CONTRACT—FRAUD—MORTGAGE NOTE—FRAUDU-
LENT REPRESENTATIONS. Only seven per cent per annum can be col-
lected on the foreclosure of a mortgage, where the note called for 108
monthly payments, each of which was slightly in excess of the ac-
crued interest at date of payment, thereby decreasing the principal,
and was ingeniously drawn with much detail, studiously avoiding any
express statement relative to the annual rate of interest, so that
it required considerable intelligence and business capacity to under-
stand its import, and the payee represented that it called for less
than seven per cent per annum, when in fact the interest aggregated
nearly twelve per cent on the unpaid principal, and the makers had
agreed to make a loan at seven per cent and failed to comprehend
the legal effect of the intricate and involved expressions employed,
and believed and acted upon the representations that it called for
less than seven per cent.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered January 13, 1911, upon find-
ings in favor of the defendants, in an action to foreclose a
mortgage. Affirmed.

*Peters & Powell*, for appellant.

*C. R. Barney* and *James A. Haight*, for respondents.

CROW, J.—This action was commenced by Equitable Sav-
ings & Loan Association, a corporation, against Susan J.

[1]Reported in 124 Pac. 118.

Barnes and Fred J. Barnes, her husband, to foreclose a real estate mortgage. From a decree in defendants' favor, the plaintiff has appealed.

The only issue is the rate of interest respondents contracted to pay. If it was twelve per cent per annum, as contended by appellant, judgment of foreclosure should be entered. If it was seven per cent per annum, as contended by respondents, the note and mortgage were fully paid, and the judgment should be affirmed. The trial judge properly found that, on May 19, 1910, respondents tendered appellant $10 then remaining unpaid; that later they deposited the same with the clerk of the superior court, and that the note and mortgage were thereby fully satisfied. Upon these findings it was decreed that the mortgage be released, and that respondents recover $25 damages, with their costs.

From the evidence we find the following additional facts: On or about May 25, 1907, respondent Susan J. Barnes, acting for herself and her husband, applied to appellant for a loan, telling appellant's manager she had been informed that appellant made loans at the rate of seven per cent per annum. The manager replied that it did, but stated that the loan with interest thereon would have to be repaid in monthly installments. Mrs. Barnes finally agreed to borrow $1,700 at seven per cent, payable in 108 monthly installments, with the privilege of making full payment and stopping interest at the end of two years. For this loan the respondents executed upon a printed form and delivered to appellant, the following note:

"Seattle, Washington, June 1, 1907.

"For value received, I, we or either of us, promise to pay in U. S. gold coin of the present standard value, to the order of the Equitable Savings & Loan Association, a corporation organized and existing under the laws of the state of Oregon, at the banking house of Dexter Horton & Co., Seattle, Washington, the sum of twenty-seven hundred fifty-four dollars ($2754) in one hundred eight equal monthly installments of twenty-five and fifty hundredths dollars ($25.50) payable

on the 20th day of each and every month, commencing with
the month of June, 1907; the same being as and for a payment
on account of the principal sum of a loan of seventeen hun-
dred dollars ($1700) obtained from said Association, and
the proportion of one thousand fifty-four dollars ($1,054)
interest thereon, which may have accrued on the balance of
said principal sum remaining unpaid at the date of the last
installment payment, said sum of one thousand fifty-four
($1,054) dollars being total interest for said period of one
hundred eight months upon said principal calculated upon
unpaid monthly balances.   If a default shall be made in
the payment of any of the aforesaid installments of prin-
cipal and interest upon the day the same becomes due and
payable, all of the remaining unpaid installments of prin-
cipal and interest accrued to date, provided for in this ob-
ligation, shall at once become due and payable at the option
of the board of directors of the said Equitable Savings &
Loan Association.   This obligation is secured by a mortgage
of even date herewith, and the pledge by the payor of one
share of the capital stock of the Equitable Savings & Loan
Association, assigned to the payee, as additional collateral
security.   In the event of foreclosure of said mortgage, I
hereby consent and agree as a part of the consideration
hereof, to a deficiency judgment and consent and agree that
the court may direct in the decree that the balance due and
costs, which remain unsatisfied after the sale of the mort-
gaged property, shall be satisfied with any of my property,
and if any part of the judgment, interest or costs remain
unpaid the sheriff shall forthwith proceed to levy upon any
of my property, or the judgment creditor may also obtain
execution or executions in the ordinary form for such de-
ficiency.   In case suit or action is instituted to collect this
obligation or any part thereof, I promise to pay such addi-
tional sum as the court may adjudge reasonable as attor-
ney's fee in said suit or action.   *After 24 months from date
and after 24 monthly installments have been paid, this note
may be paid in full by paying balance of the principal and
interest accrued to date of payment; or additional payments
of any multiple of the monthly installment, or multiples of
$100 may be made, interest ceasing on any sums so paid.*

> "(Signed)   Susan J. Barnes.
> "(Signed)   Fred J. Barnes."

To secure the payment of this note, respondents executed and delivered to appellant the mortgage deed which it now seeks to foreclose.   The words of the note which we have italicized were stamped thereon, apparently by the use of a rubber stamp.   Prior to the execution of the note, appellant's manager directed Mrs. Barnes' attention to the fact that the total interest for 108 months was only $1,054, which was less than seven per cent on $1,700 for nine years.   He represented that she was thereby obtaining a loan at a trifle less than seven per cent.   When the note was executed, it was read by Mrs. Barnes, but neither of the respondents then understood that any greater rate of interest than seven per cent was charged.   Respondents promptly made thirty monthly payments of $25.50 each.   In addition thereto they paid $1,050 on December 16, 1909, and $125.50 on February 23, 1910.   After these payments had been made, appellant, computing interest at twelve per cent per annum, insisted that $221.59 with twelve per cent interest thereon from February 20, 1910, still remained unpaid, while respondents, computing interest at seven per cent per annum, contended that $10 only remained unpaid.   Prior to the execution of the note, appellant's manager delivered to respondent Susan J. Barnes an advertising leaflet, in which, in illustration of advantages afforded by this monthly or installment plan of loan, appellant said:

"We invite your attention to the following illustration of some of the advantages offered by our monthly installment plan of a loan, as compared with the 'flat' or 'straight' loan. As an example, we will quote the average term of 60 months, or five years, wherein a loan from us of $1,000 calls for 60 monthly payments of $22.24 each, making the total amount to be paid within the 5 years, $1,334.40.   (Loans of greater or less amount in the same proportion.)   Bear in mind that the sixty monthly payments *cover principal and all charges for interest,* so that when the 60th payment has been made *the entire debt has been paid,* and the mortgage is then released.

"You will observe that you have repaid the sum

borrowed ...........................$1,000.00

and all interest charges during the 5 years,

amounting to .......................   334.40

making the *total actual cost to you for princi-pal and interest*.......................$1,334.40

"Please note that the total interest charges, $334.40, make an average of $66.88 per annum for the 5 years, hence *our loan actually costs you less for interest* than a 'flat' loan for the five years at *six and three-quarters per cent* interest per annum, for which you would pay $76.50 each year, amounting to $337.50 for the five years. Therefore, any sum that you pay for interest on a flat loan, in excess of six and three-quarters per cent per annum, would be saved to you by borrowing from us."

We have italicized this excerpt where black-faced type or italics are used in the original. The evident purpose of this leaflet was to convince proposed borrowers that the rate of interest charged was slightly less than seven per cent per annum. The note, although drawn with much detail, studiously avoids any express statement relative to the annual rate of interest. The total principal is mentioned as $1,700, the total interest at $1,054, and the 108 monthly payments as $25.50 each. A careful study of the note discloses the fact to be that the stipulated installments, made monthly, decreased the unpaid principal. These monthly payments were to continue without variation for nine years. It is therefore apparent that the respondents would not have the use of the entire $1,700 loan for all of that period, but that, as the principal constantly decreased, they were paying more than seven per cent for money actually held and used by them. Considerable intelligence and business capacity is required to understand the import and effect of the note, or to compute its exact rate of interest. The evidence convinces us that respondents did not understand the note; that they relied upon the representation of appellant's manager that they were to pay seven per cent only; that the manager knew

they were misled, and that he made no effort to enlighten them. Appellant knew the rate charged was nearly twelve per cent, and could have so stated in its note and mortgage had it intended that its customers should not be misled. The evidence sustains respondents' contention to the effect that appellant fraudulently led them to believe they were to pay seven per cent only, and that the note had been drawn on that basis. The note, in so far as it stipulated any additional interest, was without consideration. Appellant's manager, when asked why he did not tell Mrs. Barnes the payments were computed at twelve per cent, testified: "It was not necessary. The rate was mentioned in the mortgage." The defeasance clause of the mortgage is the only one in which twelve per cent or any other rate of interest is mentioned. It in part reads as follows:

"Time shall be material and of the essence hereof, and if default be made in the payment of any of the sums stipulated in said agreement after the same or any part thereof shall become due, or in the procuring of the insurance as hereinafter specified, or in the payment of the taxes or assessments upon any part of said property, or in any condition or covenant in this mortgage set out, then and in either of such cases the whole sum loaned (first deducting all sums paid in monthly installments on the principal, said credits being ascertained by deducting from the monthly installments paid in accordance with the obligation secured by this mortgage, interest at the rate of twelve per cent per annum payable monthly on balances of unpaid principal), as well as the accrued interest provided in said agreement and secured by this mortgage, shall, at the election of the party of the second part, its successors or assigns, without notice, become immediately due and payable, together with attorney's fees in such sum as the court may adjudge reasonable upon the sums which shall then be due, . . ."

Mrs. Barnes understood the rate therein mentioned to be penalty interest, which she would have to pay only in the event of a default.

Appellant, citing *Sherman v. Sweeny*, 29 Wash. 321, 69 Pac. 1117, and *Hubenthal v. Spokane & Inland R. Co.*, 43

Wash. 677, 86 Pac. 955, contends that respondents had an opportunity to read the note and mortgage; that Mrs. Barnes did read them; that they must or could have understood them; that they are now in no position to plead misrepresentation, fraud or mistake, and that they are bound by their terms. The cases cited are not pertinent to the facts proven. It is true that respondents each had an opportunity to read the note and mortgage, and that Mrs. Barnes did read them; but they were so ingeniously drawn that they served to deceive and mislead rather than enlighten respondents as to their actual meaning and import. The fact that Mrs. Barnes did read them, coupled with the statement of the manager that appellant was making the loan at seven per cent, deceived them as to the terms of the contract. The holding of this court in *Lilienthal v. Herren,* 42 Wash. 209, 84 Pac. 829, should be applied to the facts of this case. We there said:

"It is true that the respondent could read, and that the written contract was handed to him with the request that he read it, and he did glance over it hurriedly and without reading it carefully; but he testified that he was well acquainted with the agents of appellants, that he had worked for them, and he relied upon them, and that he asked them if the contract was in accordance with his memorandum agreement and was assured that it was, and he thereupon signed it relying solely upon the statement of appellants' agents that the contract was all right. The contract is long and involved. It covers five pages of typewritten matter, and it is doubtful if any person not accustomed to legal documents would fully comprehend its meaning without very careful study."

It is shown that respondents failed to comprehend the legal effect of the intricate and involved expressions which the note and mortgage contain. Any express statements that might have warned them of a higher rate than seven per cent were studiously avoided, and they were informed by the manager that the rate was only seven per cent, a statement they believed and acted upon. Had they understood the facts,

they would not have executed the note. They cannot now be estopped from making the defense which they interpose.

The trial court properly held the loan had been paid. The judgment directing the release of the mortgage and for $25 statutory damages awarded under § 8799, Rem. & Bal. Code, should be affirmed. It is so ordered.

DUNBAR, C. J., PARKER, CHADWICK, and GOSE, JJ., concur.