[No. 10256.    Department One.    September 11, 1912.]

EQUITABLE SAVINGS & LOAN ASSOCIATION, *Respondent*, v. WILLIAM BOWES et al., *Appellants*.[1]

BILLS AND NOTES—VALIDITY—EFFECT—CONSTRUCTION—RATE OF INTEREST—PAYMENT. A mortgage note promising to pay $2,025.60 in 120 equal monthly installments of $16.88 each, on account of the principal sum of a loan of $1,200 and $825.60 interest thereon, the same being total interest for 120 months "calculated upon unpaid monthly balances" is, in the absence of fraud, a valid note as against a maker capable of understanding its terms and making a correct computation; and such note calls for interest at the rate of 11.52 per cent per annum, and each monthly payment decreased the principal until, after 48 payments, the decreased principal amounted to $874.84.

MORTGAGES—STIPULATIONS—INCREASED INTEREST AFTER DEFAULT—CONSTRUCTION. A stipulation in a mortgage providing for interest at the rate of 12 per cent upon all remaining unpaid installments, if default be made in the payment of any installment of principal and interest upon the day it becomes due, provides for interest at such increased rate from the date of the default, and not from the date of the note.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered November 2, 1911, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to foreclose a mortgage.    Modified.

*Chas. E. McAvoy*, for appellants.

*Peters & Powell*, for respondent.

CROW, J.—This action was commenced by Equitable Savings & Loan Association, a corporation, against Andrew R. Cox, William Bowes, Hugh Carlin, and their respective wives, to foreclose a real estate mortgage. The only issue was whether $726.88, tendered by defendants, or $893.19, with attorney's fees and costs, demanded by plaintiff, was the sum remaining unpaid. The trial court entered findings and a

[1]Reported in 126 Pac. 436.

decree for the full amount claimed by the plaintiff. The defendants Bowes and wife and Carlin and wife have appealed.

The note and mortgage were executed on July 27, 1906, by Andrew R. Cox and Sarah Cox, his wife, then the owners of the real estate in the mortgage described. Material portions of the note read as follows:

"For value received, I . . . promise to pay . . . to the order of the Equitable Savings & Loan Association, . . . the sum of twenty hundred and twenty-five and sixty-hundredths dollars ($2,025.60) in one hundred twenty equal monthly installments of sixteen and eighty-eight hundredths dollars ($16.88) ; . . . the same being as and for a payment on account of the principal sum of a loan of twelve hundred dollars ($1,200) obtained from said association, and the proportion of eight hundred twenty-five and sixty-hundredths dollars ($825.60), interest thereon, which may have accrued on the balance of said principal sum remaining unpaid at the date of the last installment payment, said sum of eight hundred and twenty-five and sixty-hundredths dollars ($825.60) being total interest for said period of one hundred twenty months upon said principal sum calculated upon unpaid monthly balances. If default shall be made in the payment of any of the aforesaid installments of principal and interest upon the day the same becomes due and payable, all of the remaining unpaid installments of principal, and interest accrued to date, provided for in this obligation, shall at once become due and payable at the option of the Board of Directors of said Equitable Savings & Loan Association. . . . After twenty-four months from date and after twenty-four monthly installments have been paid, this note may be paid in full by paying balance of the principal and interest accrued to date of payment; or, additional payments of any multiple of the monthly installment, or multiples of $100 may be made, interest ceasing on any sums so paid."

On November 23, 1906, Cox and wife conveyed the real estate to the appellants Bowes and Carlin, subject to the mortgage lien. Forty-eight installments, to July 20, 1910, inclusive, were paid in accordance with the terms of the note. On August 17, 1910, three days before the next installment matured, appellants tendered $726.88 in full satisfaction of

the remainder of the debt, and demanded a release of the mortgage. The tender was refused. Appllants then made default and respondent foreclosed. There is no dispute as to the facts. The only question is the construction of the contract. We had the same form of note before us in *Equitable Savings & Loan Ass'n v. Barnes,* 69 Wash. 1, 124 Pac. 118. It was contended and proven by the makers of that note that they had been defrauded by the payee into the belief that they were to pay a little less than seven per cent per annum for the use of the money loaned; that they did not understand the true import of the note; and that it would not have been executed by them had they known that the actual interest rate largely exceeded seven per cent. In discussing the note, we suggested that considerable intelligence and business capacity would be necessary to understand its import and effect, or compute the exact rate of interest which it would earn. While that is true, the rate could have been computed, and can be computed in this action. There the makers were deceived by statements of the payee's manager upon whom they relied, with the result that they were induced to execute the note without any computation being made, and were misled into the belief that as drawn it would not earn more than seven per cent per annum. No fraud or misrepresentation has been pleaded or proven in this action. It is not contended that appellants were unable to understand the terms of the note, nor it is shown that they were incapable of making a correct computation. They are therefore bound by the terms of their contract. They introduced no evidence other than a memorandum computation on which they now rely.

The substance of their contention, as shown by such computation, is that $6.88 was to be applied on principal and $10 on interest each and every month during the life of the note, and that, after forty-eight installments had been paid, the total credits on principal would amount to $480, leaving $720 unpaid. To this they added $6.88, one month's install-

ment of interest, which made the $726.88 tendered on August
17, 1910. In other words, they in effect insist that there was
to be no variation in the amount of interest to be paid or in
the monthly payments upon the principal. The note is not
susceptible of this construction, which would lead to the
conclusion that the last ten-dollar installment of principal
would earn $6.88 interest in one month, and would ignore the
express statement of the note that the interest was "calcu-
lated upon unpaid monthly balances." A careful computa-
tion will disclose that, as respondent contends, the true
annual rate, although not specifically stated in the body of
the note, was 11.52 per cent.

Respondent's theory is that each monthly installment of
$16.88 was to be first applied on the interest earned during
the preceding month, then as part payment on the principal,
and that each month the principal was to be thus decreased.
For instance, the original principal was $1,200, and it ap-
pears from a proper computation incorporated in the record
that of the first installment of $16.88 payable on August 20,
1906, $11.52 was to be applied in payment of interest earned
on $1,200 during the preceding month, at the rate of 11.52
per cent per annum, while $5.36, the remainder of the monthly
installment, would decrease the original principal, leaving a
reduced or new principal of $1,194.64 upon which interest
at 11.52 per cent per annum would be computed during the
second month. It will thus be noted that, while the monthly
installments of $16.88 were to continue without change for
the entire period of one hundred and twenty months, the pro-
portions thereof to be applied on interest and principal
would constantly change; that each month the interest pay-
ment would decrease, while the principal payment would in-
crease, the latter increasing to the exact sum that the former
decreased. A computation of this character, made at the
rate of 11.52 per cent per annum, will also show that in the
one hundred and twenty months contemplated in the note,
payments would total $825.60 on interest, and $1,200 on

principal, the latter being the exact sum loaned.  Computation by the same method and at the same rate will disclose the further fact that, after appellants had made forty-eight payments, which it is conceded they did make, the decreased principal would be $874.84.    Appellants then tendered $726.88 in full settlement, which respondent refused.

The trial court, after allowing an additional stock installment credit of $1.20, entered judgment for $893.19, upon the theory that, in the event of default, interest should be computed at the rate of twelve per cent per annum from the date of the note instead of 11.52 per cent, the true rate which the note was earning.  In this we think error was committed, our construction of the stipulations of the mortgage relative to a default being that 12 per cent was to be computed after default on the principal then remaining unpaid, which would not be increased by the default.  It is therefore manifest that judgment was entered for a sum slightly in excess of the principal unpaid on July 20, 1910.  Judgment should have been entered for $874.84, less the stock installment credit of $1.20, or for $873.64, with 12 per cent interest thereon from July 20, 1910, in addition to the attorney's fees allowed and costs taxed.  Reduced to that amount, the judgment will stand affirmed.  Neither party will recover costs on this appeal.

PARKER, GOSE, and CHADWICK, JJ., concur.