[No. 23533. Department Two. April 8, 1932.]

SEATTLE TRUST COMPANY, *as Trustee, Respondent,* v.
BYRON M. MORGAN *et al., Appellants.*[1]

*R. W. Greene,* for appellants.
*Edward J. Crowley,* for respondent.

BEALS, J.—Defendants Byron M. Morgan and
Mabel B. Morgan, under date April 23, 1928, signed an
application directed to Washington General Mortgage
Company, appointing the addressee their agent for

[1]Reported in 9 P. (2d) 1079.

the purpose of securing a loan of $4,746, to be secured by a mortgage upon a tract of land in the city of Bellingham. Among many other provisions, the application for the loan contains the following:

"I do hereby agree to pay to the depository to be named in the deed of trust, interest at the rate of 6% per annum payable semi-annually and in addition thereto agree to make the following principal curtailments. This loan is for $4,200, applied for on the 60/40 plan which calls for a payment of $10.10 a month per thousand when so paid, pays all the interest and 60 per cent of the principal in 120 months.

"This loan is to carry the two year deferred payment plan which calls for a 1½ per cent service charge. And will pay on the final maturity date the sum of One thousand six hundred eighty and no/100 Dollars ($1,680.00) . . ."

Mr. Morgan also stated, in a supplement to the application above referred to, that he was an accountant, and that his annual income was five thousand dollars. The blank forms upon which defendants' application for a loan was made were evidently furnished by Mortgage Security Corporation, an eastern concern loaning money through its New York office. After considerable negotiation, Mr. and Mrs. Morgan, under date May 1, 1928, executed a "first lien real estate trust deed note," due May 1, 1938, payable to bearer, in the principal sum of $4,700, bearing interest at the rate of six per cent per annum, and having attached thereto twenty coupon notes, some for $254.40, and others for $255.35.

As security for payment of the note, defendants executed, in favor of Seattle Title Trust Company (plaintiff's predecessor in interest) and Union Trust Company of Maryland, a mortgage covering the real estate which was intended should stand as security for the loan. This mortgage referred to the note as being

in the principal sum of $4,700. It is admitted that the actual amount of money loaned to defendants was $4,200, from which amount was deducted certain items of expense, in accordance with the application signed by defendants.

Defendants made payments on account of the note for approximately two years, and, during the month of August, 1930, were advised by the agent of the owner of the mortgage that the balance due on account of the loan May 1, 1930, had been $4,271. At this time, defendants had paid on account of the loan $1,018.08, and they objected to the amount said to be due, stating that the original loan was only $4,200, and that the balance claimed to be due was incorrect.

Defendants failed to make payments called for by the note, and, during the month of January, 1931, suit was brought on the note and for the foreclosure of the mortgage, plaintiff claiming that there was due thereon the sum of $4,359.22, together with interest at six per cent per annum from November 1, 1930. The trial court signed a decree awarding judgment against defendants in the sum of $4,359.22, together with interest, attorney's fees and costs, and directing foreclosure of the mortgage and the sale of the property covered thereby. From this decree defendants appeal.

Appellants assign twenty errors, which they contend entitle them to a reversal or modification of the judgment appealed from. We assume that Mortgage Security Corporation of America (hereinafter referred to as the Mortgage Co.) was the actual principal in making the loan to appellants, and that the respondent is trustee for the Mortgage Co., which operated through several agents, and, in making loans, followed an extremely complicated procedure.

Appellants demurred to respondent's complaint, and assign error upon the order of the trial court overruling the same, in which assignment of error we find no merit. In their answer, appellants denied any indebtedness to respondent, and alleged fraud in the execution of the instrument sued upon, together with misrepresentation as to the rate of interest, and other matters. They also pleaded usury, and that in no event should any recovery be allowed against them on any basis other than that of an original loan to them in the sum of $3,970.01, less a credit in the sum of $1,018.08, paid by appellants on account of the loan. The affirmative allegations of appellants' answer were denied by respondent in its reply.

It is apparently conceded by respondent that the actual loan made amounted to no more than $4,200, from which certain deductions were made on account of expenses in connection therewith.

Appellants objected to the introduction of any evidence, and moved for a nonsuit on the ground that the real party in interest was not before the court and was a foreign corporation, not entitled to maintain the action. Appellants also contend that the trust has been fully executed, and that respondent is not qualified to bring or maintain the action. They further contend that respondent's case was pleaded in its reply, rather than in its complaint. Respondent contends that it, as trustee for the Mortgage Co., is entitled to wage the action, and that the decree entered by the trial court was in all particulars correct.

Under Rem. Comp. Stat., § 180, the trustee of an express trust may, as trustee, maintain an action without joining the beneficiary of the trust. We are satisfied that, under the law and the decisions of this court in the cases of *Thompson v. Huron Lumber Co.*, 4 Wash. 600, 30 Pac. 741, 31 Pac. 25; *Thompson v.*

*Price,* 37 Wash. 394, 79 Pac. 951; *Carr v. Cohn,* 44 Wash. 586, 87 Pac. 926; *Goodfellow v. First Nat. Bank,* 71 Wash. 554, 129 Pac. 90, 44 L. R. A. (N. S.) 580; and *Ritchie v. Trumbull,* 89 Wash. 389, 154 Pac. 816, respondent may maintain this action.

Neither does it appear that the trust has been executed, or that the action must fail because the beneficiary has paid no corporate license fees under the laws of this state.

The trial court held that the loan was not usurious, and with that holding we are constrained to agree. The note sued upon is payable ten years from its date, and, in determining whether or not a contract is usurious, the entire period of the contract must be considered. *Cissna Loan Co. v. Gawley,* 87 Wash. 438, 151 Pac. 792, Ann. Cas. 1917D, 722, L. R. A. 1916B 807; *Lewis v. Vassar,* 132 Wash. 480, 232 Pac. 312. It is also true that,

"In determining whether or not a contract for the payment of money is usurious, it is clearly the rule that, where the contract is susceptible of two constructions, the one lawful and the other unlawful, the former will be adopted." *German Savings, Building & Loan Assn. v. Leavens,* 89 Wash. 78, 153 Pac. 1092.

There is considerable variation in the testimony as to what the rate of interest upon the loan here in question actually was, but we are satisfied that under no theory can it be determined that, under our statute and the decisions of this court, the loan was usurious.

Appellants strenuously argue that the transaction is tainted with fraud, and that, by ingenious camouflage, appellants were induced to sign a note and mortgage for $4,700, when they thought they were becoming indebted for no more than $4,200. In this connection, appellants rely upon the case of *Equitable Savings & Loan Assn. v. Barnes,* 69 Wash. 1, 124 Pac.

118. This case would be in point were it not for the different circumstances surrounding the transaction here in question at the time the deal was consummated. In the first place, appellant Byron Morgan is an expert public accountant. He signed an application for a loan in which the amount thereof is referred to as being $4,746. It is true that, in this application, the loan is also referred to as being for $4,200, as hereinabove set forth, but in the same paragraph the amount of the monthly payments is set forth, together with the balance to be paid on the final maturity date. Concerning the amount of the loan, Mr. Morgan testified:

"Q. Did you make any inquiry from Mr. Critchlow as to the $500 item that was added on? A. I did. Q. And what did he say about it? A. Why, at that time Mr. Critchlow couldn't explain it himself, so he got the information or tried to get the information from some man by the name of Wilson in Seattle that was representing one of the companies at that time. And I went down to Mr. Critchlow on two or three different occasions and finally he wrote a letter and I got a copy of the letter, which you have there. (Defendants' Exhibit '12' marked for identification.) Q. (Mr. Greene) Calling your attention to Defendants' Exhibit '12.' Defendants' Exhibit '12,' you received a copy of that from Mr. Critchlow? A. Yes, I asked Mr. Critchlow to give me a copy of it and that is a copy."

Under date May 21, 1928, Mr. E. M. Critchlow, who seems to have been the Bellingham representative of the persons making the loan, wrote to Washington General Mortgage Company, the local agent at Seattle, stating that he was having some difficulty in getting Mr. Morgan to sign the papers

" . . . as he does not understand why the extra five hundred dollars is added to the mortgage, and he would like to have a letter from the Washington General Mortgage Company explaining why that five hundred dollars is added on to the principal."

Under date May 22, 1928, the addressee of the foregoing letter wrote Mr. Critchlow as follows:

''We have your communication of the 21st with reference to the above loan, referring particularly to the $500 which has been added to the principal of this loan, and believe that we can explain this to the entire satisfaction of Mr. Morgan.

''Upon referring to his application we find that he understood at the time he made application for this loan that he was to have a loan of $4200.00 on our 60/40 plan which provides for payments of $10.10 per month per thousand, which payments retire all interest and 60% of the principal in ten years leaving 40% of the principal or $1680.00 to be paid at the end of the ten year period.

''This is exactly what the mortgage papers provide for. Consequently, it should make no difference to Mr. Morgan whether a portion of his interest is added to the principal of the mortgage or whether all of the interest is added to the principal of the mortgage, as long as he is only obligated to the extent of $42.42 a month, plus a balance of $1,680 due at the end of ten years.

''The Mortgage Security Corporation seems to prefer to have all of their Mtg. papers drawn on a 6% basis, and instead of making the mortgage for $4200.00 at an increased interest rate they make the mortgage for $4700.00 at 6%, and at the top of the second page of the mortgage you can show Mr. Morgan that he pays $42.42 a month for ten years, and the balance of $1,680 at the end of ten years.'' (This letter being defendants' exhibit ''12,'' referred to in Mr. Morgan's testimony.)

The note and mortgage sued upon bear date May 1, 1928, but the mortgage was not acknowledged until May 25 following, on which latter date it was filed for record in the office of the county auditor. On cross-examination, Mr. Morgan stated that he was an accountant, and that, all during the transaction, he understood he was to pay $42.42 a month and at the end of

the period the sum of $1,680, and that he knew the total which these payments would amount to, stating, in answer to a question whether or not this was satisfactory to him at the time, ''It was at the time, yes, sir.''

On further cross-examination, Mr. Morgan stated that he had never figured out the loan for the purpose of ascertaining the average rate of interest which he would be called on to pay over a period of ten years. In answer to a question as to whether or not, given a principal of $4,200 and payments thereon at the rate of $42.42 per month for one hundred twenty months and, at the end of that period, a final payment of $1,680, he could figure the rate of interest paid on the loan, he answered that he could, but that he had never made the computation.

It is not easy to resolve this transaction into its elements, and some features thereof might well tend to mislead an ignorant person, unaccustomed to dealing with figures, and to confuse such a person as to the amount which the maker of such a loan as this would be called upon to pay, but we are unable to find from the evidence that the transaction was tainted with fraud, or that any misrepresentations were made to appellants which at this time entitle them to any relief. The questions presented fall within the rule laid down in the cases of *Equitable Savings & Loan Assn. v. Bowes,* 70 Wash. 169, 126 Pac. 436, and *Northwest Motor Co. v. Braund,* 89 Wash. 593, 154 Pac. 1098, rather than within the doctrine of the case of *Equitable Savings & Loan Assn. v. Barnes, supra.* Appellants may have entered into an unfortunate contract, and it is very likely that by the terms thereof they are called upon to pay a high rate of interest for the use of the money which they have borrowed, but we agree

with the trial court in its holding that the record discloses no facts which entitle them to relief.

Appellants contend that the action was prematurely brought, calling attention to the fact that, by its terms, the note is payable on or before May 1, 1938, upon presentation and surrender of the coupons attached thereto and executed therewith. This contention of appellants is based upon the fact that the coupons which had been paid were not presented and surrendered at or before the time the action was instituted.

All of the coupons were presented and surrendered in court at the time of the trial. Under the terms of the note and mortgage, and in view of the record made on the trial, we find no error in connection with this matter of which appellants may now take advantage.

Appellants have assigned error upon the issuance of execution on the judgment, and apparently have filed objections to the confirmation of a sale made pursuant to such execution. The notice of appeal herein is from the judgment and from the order denying a new trial of the action. Upon the record before us, we are unable to review matters which have occurred since the entry of the judgment and the denial of the motion for a new trial.

We find in the record no reversible error, and the decree appealed from is affirmed.

TOLMAN, C. J., MAIN, MILLARD, and HOLCOMB, JJ., concur.