[No. 22489. Department Two. January 16, 1931.]

F. J. BALLATA, *Respondent,* v. CHAS. F. CLISE, *Appellant,* NOEL B. CLARKE *et al., Defendants.*[1]

*Poe, Falknor, Falknor & Emory,* for appellant.
*Carl E. Christophersen,* for respondent.

BEALS, J.—Plaintiff brought this action to recover something over eight hundred dollars which he had paid defendant Charles F. Clise on account of the purchase price of lot one, block sixty, Carleton Park Addition to the city of Seattle, which property plaintiff had contracted to purchase from defendant for approximately three thousand dollars.

During the month of June, 1928, an agent of defendant showed plaintiff the property in question, which is a most desirable site for a residence, and, after

[1]Reported in 295 Pac. 149.

some negotiations, plaintiff, August 6, 1928, signed a contract whereby he agreed to purchase the lot. Plaintiff, thereafter, made several payments on account of the purchase price, but, during the month of November following, having discovered, as he claims, that the lot described in his contract did not correspond with the property which had been exhibited to him, and which he had been induced to purchase, plaintiff, through his attorney, notified defendant by letter, dated November 27, 1928, that he demanded the cancellation of the contract and the return of the money that he had paid pursuant thereto. Under date December 21, 1928, plaintiff's attorney wrote defendant the following letter:

"Mr. Chas. F. Clise,
"Securities Building,
"City.
"Dear Sir:
"Your letter of December 15th, addressed to Mr. F. J. Ballata, has been referred to us for action.

"On November 27th, we wrote you with reference to Mr. Ballata's lot. In this letter, we advised you that Mr. Ballata had elected to rescind the contract and demanded a refund of the deposits made by him, for the purchase of the lot.

"Your attorney has advised us that it will be necessary to try this matter out in the courts and we are preparing to institute action at the present time.
"Yours very truly,
"CHRISTOPHERSEN & NEWMAN.
"By Carl Christophersen."

This action was commenced early in the following May, and defendant, having denied the material allegations of plaintiff's complaint, and pleaded affirmatively that plaintiff knew, or should have known, during the month of August, 1928, the exact description and size of the property which he was purchasing, that plaintiff had thereafter made payments on ac-

count of the purchase price of the lot, and had been guilty of such laches in the prosecution of his claim for rescission as would bar plaintiff's claim for recovery, asked that plaintiff's contract be adjudged to be forfeited, and defendant's title to the lot quieted in him, as against any claim on the part of plaintiff. The action, being equitable in its nature, was tried to the court, and resulted in a decree in plaintiff's favor, rescinding the contract between the parties and awarding plaintiff judgment against defendant for the return of the money which he had paid on account of the purchase price of the property. From this decree, defendant appeals.

The lot referred to in the contract between the parties is irregular in shape. According to the plat, its northerly (or, to be exact, its northeasterly) boundary, which borders on an alley running approximately northwest and southeast, is 45.46 feet in length. It is not contended that this dimension of the lot was misrepresented to respondent at the time he and his wife examined the property, it being admitted that the northwesterly corner of the lot was correctly pointed out to respondent at that time. The westerly boundary of the lot, according to the plat, which forms a right angle with the northerly boundary, is 118.14 feet in length, and runs to West Howe street, which, from the southwest corner of the lot, curves sharply to the east and north, forming the other margin of the lot, which, according to the plat, is 140.84 feet around the curve from the southwest corner of the lot to an intersection with the alley above referred to.

Respondent contends that, when the lot was shown to him by appellant's agent, the stake at the southwest corner of the lot, at or near the margin of West Howe street, was missing, and that appellant's agent told him that the stake between the adjoining lot two and

lot three, the next lot to the northwest, was in fact the boundary stake of lot one, and that lot one extended from the northeast corner, being the intersection of West Howe street with the alley, 185 feet around the arc of the curve and along West Howe street, including within the property, as indicated, a considerable portion of lot two.

It is admitted that appellant's agent, at the time she showed respondent the property, she having previously visited the same with respondent's wife, did not have with her any plat thereof, she testifying that she told them the correct dimensions of the lot, which respondent and a friend of his, who was with the party, stepped off. It is also admitted that the stake showing the boundary line between lots one and two at the northerly margin of West Howe street was not in place, although the other corner stakes were in position. The stake between lots two and three was in place, painted white, and marked with a figure "2" on its southerly side, and "3" on the reverse. There is testimony in the record to the effect that the figures were somewhat obscured by dirt.

It is admitted that, very shortly after August 6, the date respondent signed the contract for the purchase of the lot, appellant furnished respondent with a policy of title insurance on the property, containing a correct plat of the lot showing the true dimensions thereof, respondent admitting that he looked over the policy and, as he says, "glanced" at the plat. After receiving this policy of insurance, respondent made three of the monthly payments called for by the contract, later giving notice of rescission and demanding the return of his money, as above set forth.

Appellant contends that the trial court erred in entering its decree in respondent's favor and in dismissing appellant's cross-complaint, wherein he

asked that his title to the property be quieted as against respondent.

Upon the question of what happened during the negotiations between respondent and his wife on the one hand, and appellant's agent on the other, which negotiations resulted in the signing of the contract of August 6, the evidence is in conflict. Appellant's witnesses testified that respondent was told, and was shown, the correct boundaries of the lot, both on the ground and on plats, all of which is denied by respondent. Appellant argues that respondent's dissatisfaction arose upon his discovery that some other property in the vicinity had been sold at what he conceived to be a lower price than respondent had agreed to pay for the lot described in his contract.

On many points, the testimony introduced at the trial was in utter conflict. The trial court had the advantage of hearing the witnesses and observing their demeanor upon the witness stand. A careful examination of the record convinces us that, in so far as the disputed facts were concerned, the ruling of the trial court in respondent's favor should not be disturbed. The fact that the stake at the southwesterly corner of lot one was missing, rendered it easy to fall into error in attempting to locate this corner. The fact that the lot was irregular in shape, and that its easterly and southerly boundary line was formed by a rather bulging curve, rendered the ascertainment of the southwest corner of the lot rather more difficult than it would be on the usual rectangular tract.

A more serious question is presented by appellant's contention that respondent is barred by his delay in bringing his action. It is undoubtedly the law, as contended by appellant, that a party who relies upon fraud or misrepresentation as the basis for a suit to rescind a contract "must proceed with reason-

able promptitude upon discovering the fraud, or the right to rescind will be waived." *Blake v. Merritt,* 101 Wash. 56, 171 Pac. 1013. Appellant argues that, assuming that respondent was, in the first instance, mistaken as to the shape and size of lot one, he knew, or should have known, the true dimensions of the lot within a few days after the date of the contract, from his examination of the policy of title insurance furnished respondent by appellant. If it appears that respondent, after he knew the true shape and size of the lot, made three payments on account of the contract of purchase, appellant's argument would be extremely pursuasive, but we are not inclined to hold that respondent actually knew the size of the lot prior to the month of November, when, as he testified, a friend, to whom he was showing the property, called his attention to the fact that the lot was smaller than respondent had theretofore believed it to be. Nor can we hold that, as matter of law, respondent must be held to have known the size of the lot because he had in his possession a plat showing the same as contained in the policy of title insurance. Under other circumstances, it has been held that a person will not be permitted to say that he did not understand data which was in his possession, but this is not a proper case for the application of the rule of law applicable to such cases. Respondent, after discovering the actual size of the lot, promptly, through his attorney, gave notice of rescission, and made demand for the return of his money. In support of his contention that respondent delayed too long before commencing his action, appellant cites several decisions of this court which, he contends, require the reversal of the decree appealed from.

In the case of *Deering v. Holcomb,* 26 Wash. 588, 67 Pac. 240, 561, this court held that an action to set aside

a conveyance on the ground of fraud was barred by the statute of limitations, stating in the course of the opinion that

"A party defrauded must be diligent in making inquiry. The means of knowledge are equivalent to knowledge. A clue to the fact, which, if followed up diligently would lead to a discovery, is in law equivalent to discovery,—equivalent to knowledge."

The principle laid down by this court in the case cited has been consistently followed. In the case of *Irwin v. Holbrook,* 32 Wash. 349, 73 Pac. 360, relied upon by appellant, it was held that the three years statute of limitations applied, and that under the evidence it should be held that a fraud, though not actually known, should be held to have been discovered more than three years before the commencement of the action.

In the later case of *Johnston v. Spokane & Inland Empire R. Co.,* 104 Wash. 562, 177 Pac. 810, it was held that the statute of limitations applied, and that an action for relief on the ground of fraud was barred thereby.

The cases cited are not directly controlling upon the questions here presented, as in those cases it was held that the statute of limitations applied, and, while the cases support appellant's argument that a person seeking relief upon the ground of fraud must proceed diligently and act with reasonable promptness, the cases, on the facts, are so dissimilar from the case at bar that they are of little assistance in determining the controversy here presented.

In the case of *Blake v. Merritt,* 101 Wash. 56, 171 Pac. 1013, it was held that the purchaser of a tract of land, who later brought suit to recover the purchase price paid therefor, was precluded from any recovery,

because it appeared from her own testimony that she knew of the alleged fraud prior to June, 1914; that thereafter she made two payments on account of the purchase price of the property; and in the spring of 1915 paid taxes against the land, delaying the commencement of her action for rescission until January, 1916. Upon these facts it was properly held that the plaintiff had not proceeded with reasonable promptitude upon discovering the fraud, if any had been committed, and that any right to rescind which might have existed in her favor had been waived by her conduct.

Appellant relies upon the case of *Christiansen v. Parker*, 152 Wash. 149, 277 Pac. 445, and argues that the decision of this court therein rendered is decisive here. That was an action brought to rescind a real estate contract on the ground of alleged fraud. The defendant appealed from a judgment of the trial court granting a rescission. An offer made by plaintiffs to purchase one hundred acres of land at one hundred forty dollars an acre had been accepted, and a formal contract of sale executed by the parties under date November 24, 1926, upon the making of a substantial down payment. The plaintiff took possession of the property, and in January, 1927, discovered that dams had been constructed (on adjoining property) in several of the ditches used in connection with the farm, which seriously interfered with his use thereof. He later ascertained, when he undertook his spring plowing, that close under the surface of the land there were many stumps, roots and logs, which made the tilling of the soil difficult. In July, 1928, the purchaser sued for rescission of the contract, alleging, first, misrepresentation as to the amount of cleared land; second, overflowing of the land, due to the fact that the

ditches were dammed; and third, that the cleared land was underlaid with stumps, roots and logs. This court held that it appeared from the evidence that the plaintiff, not later than the spring of 1927, knew or should have known all the facts which, it was subsequently contended, constituted ground for rescission, and that thereafter, during the fall of 1927, the plaintiff paid four thousand dollars on account of the purchase price of the land, the action to rescind not being instituted until the succeeding July. Under these circumstances, it was concluded that the plaintiffs had not proceeded with reasonable diligence, and that they therefore could not maintain an action for rescission.

In the case at bar, respondent, through his attorney, in November, 1928, gave notice of his election to rescind, stating, in his letter of approximately a month later (above quoted), that an action for rescission would soon be commenced. The complaint herein was verified February 27, 1929, but was not served until the following May. The considerable lapse of time between the verification of the complaint and its service upon appellant is not explained, and, while the delay in commencing the action affords a basis for a strong argument on behalf of appellant, after careful consideration we hold that, under the circumstances here shown, the delay was not so great as to require the dismissal of the respondent's action. The property which is the subject matter thereof consists of unimproved residence property, and it is not contended that any change has occurred in the situation thereof which would, for any special reason, render the lapse of time any special damage to appellant. In the case of a going business, or of property of a quasi-perishable nature, or of such character that the same is subject to sudden fluctuations in value, the rule that a party claiming the right to rescind a contract on the

ground of fraud must act promptly should be more strictly applied than in such a case as is here presented.

This court, in the case of *Bowe v. Provident Loan Corporation,* 120 Wash. 574, 208 Pac. 22, held that an action to rescind a purchase of corporate stock was not barred by laches, that doctrine being grounded upon the principle of equitable estoppel.

Under the facts disclosed by this record, we hold that the delay in commencing this action, although considerable and so extended as to seriously jeopardize respondent's rights, was not so great as to require the application of the doctrine contended for by appellant, and we hold that the action is not barred by respondent's delay in seeking to enforce his claim.

The judgment appealed from is affirmed.

MITCHELL, FULLERTON, MILLARD, and MAIN, JJ., concur.