[No. 23386.   Department Two.   February 24, 1932.]

LESTER MAIN *et al., Appellants,* v. WESTERN LOAN & BUILDING COMPANY, *Respondent.*[1]

[1]Reported in 8 P. (2d) 281.

*Smith & Davies,* for appellants.

*Van Dyke & Thomas,* for respondent.

MAIN, J.—This action was brought to recover the payments made upon a real estate contract and the moneys expended in improving the property. After the action was instituted, the plaintiffs gave notice of their election to have the case tried before a jury, and deposited twelve dollars as a jury fee. The defendant objected to a trial to a jury, claiming that the action was equitable in its nature, and this objection was sustained. The trial to the court without a jury resulted in a judgment dismissing the action, from which the plaintiffs appeal.

The facts essential to be stated are these: The appellants, Lester Main and wife, reside in the city of Centralia, and Mr. Main will be referred to as though he were the only party on that side of the controversy. The Western Loan & Building Company is a corporation organized under the laws of the state of Utah, with its head office in Salt Lake City, in that state. Roy F. Elstrom resided in the city of Tacoma, and was the agent of the corporation for this state and manager of its business for the district west of the mountains, which included the city of Centralia.

The Western Loan & Building Company, the respondent, owned a lot in that city upon which there were two houses. To the rear of the lot there was a double garage. From the street in front, a driveway led to the garage.

On or about August 12, 1930, the respondent sold to the appellant, upon contract, the west half of the lot, the purchase price being $1,850. One hundred dollars

was paid at the time the contract was entered into, and the balance was to be paid at the rate of $22.75 per month. Shortly after making the first monthly payment, the appellant discovered that the east line of the property covered by his contract lacked about three feet of going to the center of the double garage. Elstrom was notified, and without delay went to Centralia to look into the matter. He caused the property to be surveyed and ascertained that the east line of the lot, as described in the contract, was three feet farther west than it should have been. He told the appellant that he would endeavor to get from the one to whom the east half of the lot had previously been sold a release of the three feet on the west side of the portion sold to him, but that the matter would take a little time.

The property was sold to the appellant by a representative of a real estate firm in the city of Centralia, and, after it was discovered that there was a mistake in the eastern line of the property conveyed, the appellant had considerable talk with one or more members of that firm. The matter of making the adjustment was handled, however, by Elstrom, who made two trips to Centralia subsequent to the one mentioned. October 14th, the one to whom the east half of the lot had been sold released three feet on the west half thereof, and subsequently a contract, dated December 12, 1930, was signed by the respondent and tendered to the appellant, including the three feet which had been omitted from the first contract.

About September 20, 1930, the appellant notified the Centralia real estate firm, through whom the purchase had been made, that, unless the matter was fixed up within two weeks, he was going to move out, and he did move on October 9th. Two or three days before he moved, he testified that he went to the office of the

real estate company and had a conversation there with a representative of the firm who said, in the course of the conversation: "To hell with it; I can't do nothing with it."

About November 4th, the appellant was notified that the person who purchased the east portion of the lot had released three feet on the west side thereof, and that he would receive a contract covering all of the property which it was the intention that he would get at the time the first contract was made. As above stated, this second contract was subsequently executed by the respondent and sent by its attorney to the attorney for the appellant.

Prior to this time, the appellant had sought to institute this action by serving a summons and a copy of the complaint upon the real estate agent in the city of Centralia through whom the sale was made. The respondent answered the complaint without requiring that a legal service be made upon its statutory agent, and in its answer admitted that a mistake had been made as to the east line of the portion of the lot that was sold to the appellant, and pleaded that a release had been obtained, from the one to whom the east half of the lot had been sold, to the west three feet of the property covered by his contract. The answer further pleaded that a contract had been tendered to the appellant covering the three feet which it was the intention of both parties should be included within his contract, and a copy of the contract was attached to the answer as an exhibit.

The first question is whether the court erred in denying to the appellant a jury trial; and this depends upon whether the action was legal or equitable, because if it was the latter, it was properly tried to the court without a jury. In the complaint, recovery is sought

for the one hundred dollars paid on the contract, $22.75, the first monthly payment, $175 for labor, $55 for paint, $60 for lumber and brick, and another item which is not here material. It will thus be seen that by the complaint the appellant sought to recover the money paid upon the contract and the money expended for improving the property. Before these sums could be recovered, it was necessary that the contract be rescinded, and an action for rescission is one in equity and not one at law. *Reser v. Labude,* 103 Wash. 228, 173 Pac. 1093; *Thiel v. Miller,* 122 Wash. 52, 209 Pac. 1081, 26 A. L. R. 523.

The appellant says, however, that it was not necessary to bring an action to rescind the contract, because he had already rescinded it by notice and moving out on account of the fraud which he claimed had been practiced upon him, in that he did not get the three foot strip above mentioned. But one party to a contract, while he may give notice of his election to rescind, cannot rescind the contract over the objection of the other party and recover the payments made thereon in an action at law. After having given notice of election to rescind, it is necessary that an action be brought for that purpose within a reasonable time or the right to rescind, if one exists, will be lost. *Ballata v. Clise,* 160 Wash. 343, 295 Pac. 149. Whether the contract should be rescinded when a controversy such as this arises, is a matter for a court of equity to determine.

The appellant in his complaint, it is true, prayed only for a money judgment, but this is not controlling. Whether the action was one at law or equity must be determined from the facts alleged in the complaint, and not from the prayer for the relief to which the pleader may think he is entitled. The court did not err in sustaining the objection to a jury trial.

■ The next question is whether, upon the merits, the appellant was entitled to rescission, and in this connection stress is first laid upon the statement made by the representative of the real estate firm in the city of Centralia, above quoted, to the effect that he would have nothing further to do with the matter. This statement did not justify the appellant in refusing to go forward with the contract and vacating the property, for two reasons: First, this agent had no authority to bind the respondent in the matter, he being merely a sales agent and the matter at the time was being handled by the respondent's state agent; and second, the sales agent, in making the statement, did not purport to be speaking for the respondent, but was only declaring his personal attitude in the matter.

■ After the mistake was discovered, the respondent, through its state agent, was required to proceed with reasonable promptitude to correct it, and this, the evidence shows beyond question, was done. It took time to investigate the matter and have a survey made; it took time to negotiate with the owner of the eastern portion for the three foot strip; and it took time to get a new contract prepared, have it executed at the head office and returned. At no time was the possession of the appellant or use of the garage interfered with or disturbed, and he was not justified in attempting to rescind the contract and in removing from the property while the respondent, through its agent, was in good faith endeavoring to adjust the matter and there had been no unreasonable delay.

In *Sevigny v. O'Neill*, 154 Wash. 393, 282 Pac. 215, it was held that a purchaser under an executory contract was not entitled to rescind the contract for failure of the description to include land pointed out as part of the purchase, where the vendor was able to convey good title to the land in question and offered to do

equity by reforming the contract and deeding the land actually pointed out. It was there said:

"The only question raised is whether or not appellants are entitled to a rescission on the ground and for the reason that certain land pointed out as belonging to the property in question is not contained within the legal description given in the contract, and probably was not owned by the respondent at the time of the execution of the contract. This court has held that, where a vendor under an executory contract for the sale of land has no title to the land which he has contracted to sell and cannot or will not perfect a title thereto, that constitutes just ground for rescission. *Henderson v. Miller,* 119 Wash. 362, 205 Pac. 1. But in that case, the court said:

" 'The almost universal holding of the courts is that the fact that a vendor in a contract for the sale of land is not the owner thereof at the time of making the contract is not of itself ground for rescission on the part of the purchaser. It is a question of conveying the title or having it conveyed to a purchaser when the time of performance comes. *Webb v. Stephenson,* 11 Wash. 342, 39 Pac. 952; *Morris v. Columbia Canal Co.,* 75 Wash. 483, 135 Pac. 238.'

"In the instant case, there is no question of the ability of respondent to convey the land described in the contract. He has good title to that portion of the land as shown by his deed—at least his title is no place questioned in this action. During the course of the trial, and when it was discovered that the buildings were partially without the land described in the contract, respondent offered to, and did, procure a deed to that portion of the land which appellants claim was pointed out to them, offered the deed in evidence, but it was refused, and it is apparent from his procuring the deed and offering it that he will be able to convey good title to the land which it is claimed was pointed out, if appellants make their future payments. This is an equity case and respondent offered to do equity, and while it is true that the contract probably should be reformed to include the land which was actually

pointed out and which is actually occupied by the buildings, respondent has offered to do this."

That case is closely in point, and what is there said is applicable here. If there is any difference between the two cases, the facts in this case are more conclusive against a rescission than they were in that case.

The case of *Ballata v. Clise*, 160 Wash. 343, 295 Pac. 149, differs from this one in two respects. There, the defendant denied that there had been any mistake or misleading in pointing out the property sold, and the question was, aside from the question of fact thus presented, whether the plaintiff, after having given notice of his election to rescind, proceeded with reasonable promptitude in bringing the action.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.