[No. 25636. *En Banc.* July 22, 1936.]

THEODORE B. BRUENER, *Appellant,* v. J. HOMER L. HILLMAN, *as Administrator, et al., Respondents.*[1]

[1]Reported in 59 P. (2d) 731.

664

*Rummens & Griffin (Theodore B. Bruener, pro se)*, for appellant.

*Clarence L. Gere* and *Adam Beeler*, for respondents.

BEALS, J.—Under date June 5, 1926, Clarence D. and Bessie Olive Hillman, husband and wife, as vendors, by contract in writing agreed to sell to Alex Polson some eighteen hundred acres of land in Snohomish county, Washington, for a total purchase price of $47,000, of which five thousand dollars was placed with the contract and a warranty deed in escrow in National City Bank of Seattle, to be paid to vendors when they had paid certain delinquent taxes and disclosed satisfactory title, five thousand dollars to be paid in six months, and the balance to be paid in twenty installments of $1,850 each, one payable every six months following the payment of the second five thousand dollars; deferred payments to bear interest at the rate of six per cent per annum.

The purchaser agreed to pay before delinquency the taxes for 1926 and all subsequent taxes accruing during the life of the contract. The vendors agreed to pay all taxes prior to those levied for the year 1926. It was agreed that time was of the essence of the contract, and that, if the vendee should fail to make the payments which he agreed to make,

". . . vendors shall have the right and privilege to cancel this contract and to forfeit the interest of the vendee therein, and upon such forfeiture and cancellation all rights of the vendee in said property shall cease, and all payments made shall be retained as liquidated damages and not as a penalty. Provided, however, that no such cancellation or forfeiture shall

be made except upon fifteen (15) days written notice to the said vendee, within which time the said vendee shall have the right and privilege to cure his default. The remedy of cancellation and forfeiture in case of non-payment shall be the sole remedy of the said vendors, and in no event shall the vendee be held personally liable for the payment of the balance of the purchase price."

Later, it was agreed that a contract, dated August 16, 1926, be substituted for the prior contract between the parties. This made no change in the situation which is here important. The contract was placed in escrow, and was not recorded. All payments due under the contract were made up to and including April, 1931, and the taxes against the land for the years 1926 to 1930, inclusive, were paid. July 31, 1930, the vendee, Alex Polson, assigned the contract to Theodore B. Bruener, the plaintiff in this action, the assignment being promptly filed for record in the office of the auditor of King county, and notice thereof being given to the vendors.

September 13, 1933, vendors served upon Mr. Bruener a notice requiring that all payments due and unpaid under the contract, together with delinquent taxes, a total amounting to some twelve thousand dollars, be paid within fifteen days. This notice was signed by the H. H. H. Land & Livestock Company, a corporation, as owner. October 5, 1933, a notice of forfeiture and cancellation of the contract, signed by the above-named corporation, was served upon Mr. and Mrs. Polson and Mr. Bruener.

The bank which was acting as escrow holder wrote Mr. Bruener to the effect that Mr. Hillman had demanded that all the escrow papers be delivered to him, whereupon Messrs. Polson and Bruener served upon Hillman a writing, stating that they treated the notice of cancellation and termination of the contract as a

cancellation and rescission, and that they demanded the return of all money paid under the contract. They authorized the bank to deliver the escrow papers to Mr. Hillman, they surrendered the abstracts which they held, and tendered to Mr. Hillman a quitclaim deed to the land described in the contract.

This action was commenced November 3, 1933, Mr. Bruener, as Mr. Polson's assignee, demanding judgment for the amount which had been paid under the contract, together with interest and costs. The action was tried to the court, and resulted in the entry of findings of fact and conclusions of law in defendants' favor, followed by the entry of judgment dismissing the action with prejudice, from which judgment plaintiff has appealed.

Appellant assigns error upon the making of several findings of fact and conclusions of law, and upon the refusal of the trial court to grant him the relief prayed for in his complaint.

After the rendition of the judgment appealed from, Clarence D. Hillman died, and respondent J. H. L. Hillman, as administrator, was substituted as party respondent.

The question presented on this appeal is: Were the Hillmans in default under the terms of the contract at the time they canceled the contract and forfeited the money paid thereunder; and, if so, was the cancellation and forfeiture legally justified?

By paragraph three of the contract of sale, the vendors agreed to furnish a complete abstract of title to show good and marketable title in them, the title disclosed by the abstracts to be approved by vendee before vendors should receive the first payment called for by the contract. Title to some lands proved to be defective and lieu lands were accepted, whereupon the contract of August 16th was executed and placed

in escrow in the bank. In this contract, it was recited that the abstract of title had been furnished, disclosing a title satisfactory to the vendee.

After the assignment of the contract to appellant, the abstracts were brought up to date, whereupon appellant discovered that a tract of land a little over four acres in extent, which was included in the descriptions to be purchased by Mr. Polson, had been sold for taxes December 7, 1927, and a treasurer's deed issued to H. H. H. Land & Livestock Company, a corporation (which corporation will hereinafter be referred to as Livestock Co.). Appellant also discovered that Mr. and Mrs. Hillman had, by warranty deeds, conveyed to Hillman Investment Company, a corporation (hereinafter referred to as the Investment Co.), all of the lands described in the Polson contract. Under date August 20, 1930, appellant wrote Hillman, calling his attention to the tax deed and to the conveyances to the Investment Co., saying:

"If you control the Hillman Investment Company and the H. H. H. Land & Livestock Company, it is hereby requested that you cause to be conveyed to yourself and wife the lands covered by the Polson contract."

September 12th following, Mr. Hillman wrote appellant: "Yes, the H. H. H. Land & Livestock Company is us, O. K. The Bank of Commerce is trustee for you, so your land is O. K." October 30th following, appellant again wrote Mr. Hillman:

"I warn you that it will be necessary for you to immediately transfer this title back in your own name, otherwise you will be subject to a suit for damages."

The trial court found, and we are convinced that the findings were correct, that Mr. and Mrs. Hillman owned all of the capital stock of the two corporations

above named, and that those corporations were controlled by the Hillmans.

Appellant strenuously contends that Mr. Hillman violated his contract by purchasing the four-acre tract at tax sale in the name of the Livestock Co., and by conveying all of the land covered by the Polson contract to the Investment Co.

After receiving Mr. Hillman's letter of September 12th, appellant paid the installment of principal and interest due October 1st. A few days thereafter, the Hillmans caused the Investment Co. to convey to the Livestock Co. all the lands covered by the Polson contract, which conveyance appellant contends constituted a third breach of the contract. July 22, 1932, the Investment Co. executed another deed, conveying the Polson lands to the Livestock Co. and one Homer Spencer, who thereafter reconveyed the property to the Livestock Co.

During 1931 and 1932, Mr. Hillman granted certain requested extensions of time for the making of payments under the contract, during which period appellant several times asked that the lands covered by the contract be reconveyed to the Hillmans. Under date April 2, 1932, Mr. Hillman wrote appellant: "Title is O. K. in every way. Make out the deed the way you want it. I will have it signed at once." Appellant did not answer this letter, now arguing that he was under no obligation to prepare any deeds for the Hillmans.

After Homer Spencer reconveyed the lands to the Livestock Co. in February, 1933, the escrow holder permitted Mr. Hillman to write at the end of the Polson contract the corporate name of the Livestock Co. by himself as president, J. H. L. Hillman also signing as secretary. A certificate of acknowledgment by the Hillmans, as officers of the corporation, dated Febru-

ary 7, 1933, was attached to the contract. All this was done without appellant's knowledge or consent.

Early in 1933, Mr. Jesse Warren and one Evers became interested in the lands, and Mr. Hillman made some effort to cause a sale to be made to them by appellant. During this period, Mr. Hillman requested appellant to pay the back taxes due against the property. It was at a meeting attended by Messrs. Warren and Evers, Mr. Hillman and appellant, in September, 1933, that Mr. Hillman served upon appellant the notice requiring that the contract be put in good standing within fifteen days. This notice was signed by the Livestock Co., the record owner of the property. The other steps followed as hereinabove set forth.

The trial court was of the opinion that the facts found, hereinabove briefly stated, did not show that the Hillmans were in default at the time the contract was canceled, for the reason that the time for performance of the contract by vendors had not arrived.

Appellant admits that, in this state, it is the general rule that a vendor need not have title to the lands which he agrees to convey until such time as the purchaser becomes entitled to receive a deed; appellant contending, however, that the general rule does not apply in the case at bar, because in the agreement in question the parties contracted for a present marketable title, the contract showing that the title disclosed by the abstracts was to be satisfactory to the vendee before vendors should receive any of the purchase price. Appellant stands squarely upon the proposition that Hillman wrongfully terminated and forfeited the contract October 5, 1933, and that appellant was thereby accorded the right to, himself, rescind the contract and recover the money paid thereunder.

Appellant cites authorities to the effect that an escrow, generally speaking, places the papers so

placed in escrow beyond the control or dominion of the parties, citing *Bronx Investment Co. v. National Bank of Commerce*, 47 Wash. 566, 92 Pac. 380; *Adams v. Harris*, 118 Wash. 189, 203 Pac. 48; *Voellmeck v. Harding*, 166 Wash. 93, 6 P. (2d) 373, 84 A. L. R. 608. The rule of law is correctly stated in the cases cited, and it may be assumed that Mr. and Mrs. Hillman had no control over the deed which rested in escrow as long as the vendee maintained the contract in good standing. It does not, however, necessarily follow, as argued by appellant, that, in such a case, the vendor, although he has lost control over the deed, has also lost all control and dominion over the property covered thereby. The vendor's interest in the land is still property belonging to him, and he may use the same without jeopardizing his rights under the contract, so long as he does not violate the terms thereof. Appellant never perfected his rights under the contract nor became entitled to demand a deed according to its terms. It is conceded that the failure to pay the taxes on the four-acre tract was due to inadvertence, but appellant contends that the land should have been redeemed from the tax foreclosure and that the contract was breached when title to this small area was taken in the name of the Livestock Co.

The parties did not give notice to the world by placing the contract of record, but allowed the title to the lands to remain in the vendors, who could, of course, have conveyed good title thereto to a third party without notice of Mr. Polson's rights, thereby defeating the vendee's claim under the contract, although, of course, subjecting vendors to an action for damages.

Appellant complains of certain findings of the trial court to the effect that Mr. Hillman, in transferring title to the property to the corporations, was endeavoring to protect the title against clouds thereon

which might be occasioned by lawsuits pending against him, or other matters. We do not deem these findings of importance, as we assume, for the purposes of this opinion, that no good reason for the transfers existed; it not appearing, however, that, by the transfers, vendors intended to wrong or defraud appellant or his predecessor in interest.

We also assume that the execution of the contract, while in escrow, on behalf of Livestock Co., detracted not at all from any rights which existed in favor of appellant to object to the conveyances of the land by Mr. and Mrs. Hillman to the corporations.

Appellant concedes that, after learning of the conveyance to the Investment Co., he made two payments under the contract, but contends that this was done in reliance upon a promise by Hillman to the effect that he would cause the property to be reconveyed to himself. In this connection, it should be remembered that Hillman, as above set forth, wrote appellant, telling him that he (Hillman) would sign any deed which appellant would prepare. Of course, appellant was not obligated to prepare any deed for the Hillmans to sign, but if appellant desired to take that position, he should have answered Hillman's letter, stating that he did not care to prepare the deed and making his position on that point clear. His silence is certainly some evidence that, at least at that time, the state of the title was matter of indifference to him.

Appellant cites authorities to the effect that, if Hillman was himself in default under the contract, his action in attempting to cancel the contract and forfeit the payments amounted simply to a repudiation of the contract, and that appellant then had a right to accept such repudiation and recover back the money paid. The authorities cited support this proposition, which is undoubtedly correct as a legal principle. Ap-

pellant does not contend that the fact that Hillman transferred the title to the property to the two corporations, in itself, constituted a repudiation of the contract. Appellant does, however, contend that the conveyance to the corporations, no such conveyance being authorized by the contract, was a breach of the contract on Hillman's part, and that this breach, coupled with the act of cancellation and forfeiture, constituted in law a repudiation and abandonment of the contract by the vendors, which appellant had the right to accept as a repudiation and abandonment, basing upon Hillman's actions and appellant's acceptance of the situation this suit to recover the money paid.

Appellant further contends that the fact that the corporations were controlled by the Hillmans and were at all times ready and willing to convey the land pursuant to the contract, is immaterial, and that appellant was not required to wait, to demand such a conveyance or reconveyance to the Hillmans, until he had made the last payment called for by the contract.

Mr. and Mrs. Hillman clearly had the right to deal with their interest in the contract, or with their interest in the land itself, subject to the contract, in any manner which nowise violated or impinged upon their contract with Mr. Polson. It was not necessary, as argued by appellant, that the Hillmans' acts be authorized by the contract; it is sufficient if their acts did not violate any of the terms thereof. While the contract did not provide that its conditions extended to the assigns of the parties, its assignment is not expressly forbidden, and appellant himself recognized the transferability of the contract by accepting an assignment thereof from Mr. Polson.

The parties were willing to rely upon the contract and the deed, both placed in escrow without notice of record concerning the same. While time was made of

the essence of the contract, the vendee took care to provide that he should have fifteen days notice from the vendors requiring him to place the contract in good standing, should he be in default thereunder, before vendors could exercise their option to declare a forfeiture, and further, that in no event could he be held personally liable for any portion of the purchase price.

Appellant, after he was fully aware of the existence of the tax deed to the four-acre tract in favor of the Livestock Co. and of the conveyance to the Investment Co., requested and received extensions of time for the payment of money due under the contract. He contends that he relied upon Hillman's promise to cause the property to be reconveyed, but it is significant that, when Hillman by letter requested that appellant prepare such a deed as he desired, appellant ignored the suggestion. When required to place the contract in good standing, appellant made no attempt to comply with the demand, made no request for reconveyance of the property to the Hillmans as a condition precedent for action on his part, and made no tender of any amount due under the contract. It nowhere appears that appellant ever questioned Hillman's statement that he and his wife absolutely controlled both corporations and could at any time cause the execution of any necessary instrument by the corporations.

Appellant intimates that it might well be held that he had waived his right to rescind, strenuously contending, however, that, when notice of forfeiture was given October 5th, he was entitled on demand to receive back the payments which had been made under the contract.

■ Appellant argues that this is a pure action at law for the recovery of money. In determining whether or not an action is legal or equitable in its

nature, the pleadings must be scrutinized and the question decided in view of the allegations contained therein, no mere demand for judgment being controlling. In our opinion, this case falls within the doctrine of the case of *Main v. Western Loan & Building Co.*, 167 Wash. 1, 8 P. (2d) 281, which was an action brought to recover payments made upon a real estate contract and money expended in improving the property. In the case cited, it was held that the action was equitable in its nature, and, following the rule therein laid down, if the question be here of importance, this must be considered an equitable action.

■ ■ In the case of *Webb v. Stephenson*, 11 Wash. 342, 39 Pac. 952, it appeared that the plaintiff sued to establish rescission of a contract for the sale of real estate and for the recovery of money paid thereunder, plaintiff alleging that the vendor had represented at the time of making the contract that he was the owner of the premises and that the title was unencumbered. Plaintiff further alleged that the defendant held the title to only a portion of the land covered by the contract, and that this tract was mortgaged. He further alleged that the defendant had thereafter conveyed the tract to a third party.

In its opinion, this court approved the well-established rule that the vendor in a contract for the sale of real estate need not then be the owner of the land which he agrees to sell. The court commented upon the fact that a purchaser might hesitate to agree to buy land from one who did not own it, but noted that, in the case then before the court, it appeared that the plaintiff himself had not carried out his obligations under the contract. The court considered the fundamental proposition in the case, holding "that before a court of equity will annul a contract and decree a refunding of the money paid thereon, the peti-

tioner must show a case clearly warranting such action." In its opinion, the court also said:

"It does not necessarily follow that because the defendants have made a deed to said tract of land or any portion thereof to some one else since the execution of this contract, they will not be able to fulfill the conditions of their contract when the time for their fulfillment arrives. A deed might be made for many purposes which would in no way interfere with the final consummation of the contract on the part of the vendor. In fact, if he is allowed to contract for the sale of land to which he has no title at the time the contract is made, it is not illogical to presume that he has a right to dispose of the title and obtain it again before the time for the fulfillment of the contract expires or it may well be that the deeding to certain persons is for the purpose of convenience in conveying this land at the time the deed is contracted to be conveyed. None of these propositions are negatived by the allegations of the complaint."

The judgment of the trial court in favor of the defendant was affirmed.

In the case of *Big Bend Land Co. v. Hutchings,* 71 Wash. 345, 128 Pac. 652, it was held that the vendor's interest in an option contract for the purchase of land was assignable, and that such a case did not fall within the rule that contracts based upon personal confidence, coupled with the contract, are not assignable.

In the case of *Rauch v. Zander,* 138 Wash. 610, 245 Pac. 17, it was held that tender of performance by the successor in interest of the original vendor was sufficient. In the case cited, the contract provided for the performance by the successors or assigns of either of the parties, which element is here lacking; but the case is of interest in connection with the questions to be here determined.

676

Appellant is not here resisting a forfeiture. On the trial of the action, it was stated on behalf of Mr. and Mrs. Hillman that they were then ready and willing to have the court fix a time within which vendee might make his payments and continue the contract, and a quitclaim deed from the Livestock Co. to Mr. and Mrs. Hillman was then tendered into court. Appellant refused the offer, stating that he elected to stand upon his notice and demand for the return of the money paid under the contract. We call attention to this matter merely to show that appellant registered no interest in any proposed reinstatement of the contract.

The case of *Foxley v. Rich,* 35 Utah 162, 99 Pac. 666, is of interest. That was a case involving a contract for the sale of real estate and a deed placed therewith in escrow. The plaintiff was the vendee in the contract and sued to recover money which he had paid pursuant thereto. As in the case at bar, the vendee had taken possession of the property covered by the contract. The vendor, after the contract was executed, conveyed the property to another, contending that the deed was merely a mortgage. The vendee contended that the execution of this deed constituted a rescission or abandonment of the contract, entitling him to recover back his payments. In the course of its opinion, the court said:

"Upon a careful examination of the authorities cited by respondent and appellants it will be seen that there is, in reality, no difference between them in principle. It is quite true that conveyance of the title by the vendor, after entering into an executory contract of sale, may have the effect claimed for it by respondent, and it is equally true that it may not affect the obligations assumed by the contract as claimed by the appellants. If the effect of the conveyance is such that it places it beyond the power of the

vendor to comply with the terms of his contract of sale, or amounts to a repudiation of it, or places a substantial burden upon the vendee not assumed by him in the contract, then the vendee need not further comply with his part of the contract, but may treat it as abandoned by the vendor, and sue and recover back any payments he has made upon the contract, in an action for money had and received by the vendor for the use and benefit of the vendee. *James v. Burchell,* 82 N. Y. 108. Upon the other hand, if the conveyance made has the effect of transferring the title to another, who has received it with knowledge of the existing contract, or where it is not beyond the power of the vendor to comply with the contract of sale, although a conveyance is made, or where, as in the case at bar, the title is transferred in the nature of security for the obligation assumed by the vendee, and the party to whom the title is transferred and the security given is at all times able, ready, and willing to comply with the contract, and in all cases where the party to whom the title is transferred claims no right to the property, but holds it for convenience merely, and is willing to transfer the title when the vendee shall comply with his contract, then the vendee has no right to regard the contract abandoned, but in order to recover back any payment made by him must rely on some default of the vendor. The law in this class of cases, the same as in all others, looks to the substance, and not to the mere form, of a transaction. The cases cited by both parties, when considered in the light of the facts and circumstances which controlled the courts in deciding them, do no more than to illustrate and apply these principles.

"In the cases cited by respondent it is not held that the mere naked fact of making a conveyance by a vendor after entering into a contract of sale constitutes an abandonment *per se* of the contract on his part, nor is it held by those cited by appellant that, in conveying the title after a contract for sale is entered into, under no circumstances may an abandonment of the contract by the vendor be effectuated; but the true principle upon which the decisions rest is that the effect that such a conveyance will be given

depends upon the intention of the parties, and upon whether the title is in fact placed beyond the control of the vendor so his acts amount to a repudiation of his contract.''

In the case at bar, the record clearly shows that the corporations concerned were mere creatures of Mr. and Mrs. Hillman. Mr. Hillman so advised appellant, who never questioned Mr. Hillman's statement. It is not every trivial act which can afford a basis for such relief as appellant here demands.

Appellant relies upon the case of *Gibson v. Rouse*, 81 Wash. 102, 142 Pac. 464, which was an action to rescind two real estate contracts and recover money paid thereon. It appeared that the defendants (the vendors) had, after agreeing to sell the property to plaintiff, executed mortgages thereon, payable at definite dates in the future. After an attempted forfeiture by vendors, plaintiff sued to recover the payments which she had made. The judgment in favor of the plaintiff was affirmed on appeal, this court holding that the appellants (the vendors), having withdrawn the contracts from escrow without right and while they themselves were in no position to have performed the contracts by conveying the property free from encumbrance, had in effect rescinded the contracts, and could not complain if respondent accepted their act as a rescission and demanded return of the money which had been paid. No elements of estoppel appeared, and it was properly held, upon the rather complicated facts of the case, that the trial court had rightly awarded judgment for the return of the money paid on account of the purchase price of the land agreed to be conveyed. Mortgages to third parties for definite periods extending beyond the term of the contract differ greatly from conveyances to corporations which are merely personal agencies of

the vendors, such as those with which we are here concerned.

Appellant also cites the case of *Finch v. Sprague,* 117 Wash. 650, 202 Pac. 257, which was an action to recover damages for breach of a contract for the purchase of real estate. From the opinion, it appears that the vendor, after the final payment upon the contract had become payable, wrote a letter to the vendee (the plaintiff in the action), which he, the vendor, contended was a demand to place the contract in good standing within ten days, under penalty of forfeiture, but which this court held to be an absolute abrogation of the contract. The opinion states that, at the time of the writing of the letter referred to, the vendors had not the power to convey the real estate, as they were not then the owners of a large portion thereof. No element of estoppel was present, and it was held that, as the vendor had under the contract no authority to declare a forfeiture without ten days notice, and then had no title to the greater portion of the land, and, as stated by this court, "after that date had no power to compel the conveyance thereof from" the third party who owned the same, the vendee could lawfully treat the contract as rescinded and recover that which he had paid thereunder.

A voluminous correspondence is in the record, showing clearly the knowledge of the respective parties concerning the condition of the title and their wishes and ideas, respectively, concerning the same. Under date August 14, 1930, appellant wrote an abstract company in Everett, suggesting that the foreclosure action against the four-acre tract be omitted from the abstract, and that the abstract simply include the sale and the deed to the Livestock Co. August 20th following, appellant wrote Mr. Hillman, advising him that apppellant had had the abstracts

brought down to date, and noted that the property had been conveyed to the Investment Co., continuing:

"If you control the Hillman Investment Company and H. H. H. Land & Livestock Company, a corporation, it is hereby requested that you cause to be conveyed back to yourself and wife the lands covered by the Polson contract, otherwise you will be liable for damages under your warranty in the deed, which is in escrow in the National Bank of Commerce at Seattle."

September 12th, Mr. Hillman wrote appellant:
"Dear Friend

"Yes the H H H L & Livestock Co is us OK. The Bank of Commerce is trustee for you so your land is OK. Resp. C. D. HILLMAN"

October 30th, appellant again wrote Mr. Hillman, calling his attention to the fact "that you and your wife had conveyed title to the lands under contract to Alex Polson to the H. H. H. Livestock Company."

February 9, 1931, a firm of attorneys in Seattle wrote appellant, asking information concerning the Polson contract, stating that a client of the firm had purchased a large quantity of land from Mr. Hillman, and asking if the Polson contract was in good standing. The next day, appellant acknowledged receipt of this letter, and continued:

"The contract made between Hillman and Alex Polson, which was assigned to me, is in good standing. The deed and contract are in escrow in The National Bank of Commerce. At the time I recorded the assignment from Mr. Polson to myself, I had the abstract of title brought down to date, and everything seemed clear at that time."

Again on February 18th, appellant wrote the same firm, stating, inter alia:

"After the assignment of the Polson contract to me, I had the assignment recorded, which referred to

the original contract, and then had my abstracts brought down to date, which show a clear title.''

November 18, 1931, appellant prepared a ''memorandum to Mr. Hillman,'' in which attention was called to the deed in escrow, to the tax deed to the Livestock Co., and the Hillmans' deed to the Investment Co., appellant stating that deeds from the two corporations to the Hillmans should be executed and recorded. January 14, 1932, appellant wrote Mr. Hillman again, requesting that the deeds be executed, the letter including the following paragraph:

''When you were in my office in November you kindly extended the time to make the payment which ordinarily became due on October 1, 1931, to February 1, 1932. I would like another extension of time, as it is impossible for us to make the payment at this time. Kindly give me an extension until April 1, 1932.''

It was apparently in answer to this or a similar request that Mr. Hillman wrote:

''Friend Bruener                    Seattle, Wn. 4-2-1932.
''Please make out deed the way you want it. I will have it signed at once. Resp.          C. D. HILLMAN
''Title is OK every way.''

December 16, 1932, appellant wrote Mr. Hillman:

''Your recent letter received.
''I think we would be willing to sell 20 acres at a price of $350 per acre, provided a substantial down payment is made. Find out what you can do and let me know.
''Wishing you a Merry Christmas and hoping that you are in good health, I beg to remain . . .''

February 4, 1933, appellant wrote Jesse M. Warren a letter, including the following paragraph:

''I am enclosing you herewith two copies of the descriptions contained in my contract from Hillman. I colored the map from the descriptions and believe

them to be correct. Between Hillman and myself we can give a good contract. The tract comprises a little more than 1803 acres, more or less. The mineral rights will be excepted. The total price is $75,000.00, down payment and terms and release clause to be agreed upon.''

Even though it be assumed that the Hillmans had to some extent impinged upon the escrow, it clearly appears from the record that they had no intention of violating the terms thereof, or of doing anything which would affect, injuriously or otherwise, the title which they had agreed to convey. Their violation of the contract, if they did violate it, was technical only, and it must be held that appellant understood that no substantial right which he enjoyed under the contract had been jeopardized. It is apparent that appellant knew that he would receive good title when he carried out his contract, and requested and received favors from the Hillmans after he thoroughly understood the situation.

We are of the opinion that no default appears on the part of the vendors of which appellant may take advantage, and that, in any event, appellant, in view of his knowledge of the situation and his conduct, cannot now maintain this action.

The trial court properly held that appellant was not entitled to the relief which he sought, and the judgment appealed from is accordingly affirmed.

BLAKE, MAIN, MITCHELL, and STEINERT, JJ., concur.

TOLMAN, J., concurs in the result.

GERAGHTY, J. (concurring in the result)—I am of the opinion that Hillman breached his contract when he conveyed title to his holding companies. It will not do to say that, controlling these companies, he could make title when wanted. That was not the agreement.

The appellant's assignor, Polson, was not willing to trust Hillman to that extent.

The agreement stipulated that before the initial payment was made to Hillman, the abstract should show clear title in Hillman, and that a deed conveying this title should be deposited in escrow for delivery to the purchaser by the escrow holder on payment of the purchase price. It was not consistent with the letter or spirit of the agreement that Hillman could so deal with the title that, when the right to a delivery of the escrowed deed matured, appellant should be dependent upon his good will.

But while holding the view that the contract was breached, I think the course of dealing of the appellant with Hillman, after he acquired knowledge of the breach, was such as to work an estoppel.

HOLCOMB, J., concurs with GERAGHTY, J.

MILLARD, C. J. (dissenting)—I dissent. Appellant had a right to refuse to make payments on the contract until the title had been put back in Hillman, as contemplated and agreed upon by the parties. Hillman's cancellation of the contract when he was in default constituted a repudiation of the contract.