[No. 25271. Department Two. May 23, 1935.]

AUTOMATIC CANTEEN COMPANY OF WASHINGTON *et al.,*
*Respondents and Cross-appellants,* v. AUTOMATIC
CANTEEN COMPANY OF AMERICA, *Appellant.*[1]

*Ryan, Askren & Ryan* and *Howard W. Sanders,* for appellant.

*Allen, Froude & Hilen,* for respondents and cross-appellants.

HOLCOMB, J.—This action was originally begun by the Automatic Canteen Company of Washington, a domestic corporation, against appellant. At the trial, an amendment adding the Automatic Canteen Company of Oregon as a plaintiff was allowed by the trial court.

The action is one based upon three separate causes of action, in the first of which respondents prayed damages for the cancellation and forfeiture of a so-

[1] Reported in 45 P. (2d) 41.

called "Distributor's Exclusive Territory and Participation Agreement," set out in the complaint, without right, by reason of which it is alleged that respondents have been damaged in the sum of twenty thousand dollars' loss of future profits under that agreement.

By the second cause of action, respondents claim damages under a certain contract entitled "Operator's Exclusive Territory Franchise and Lease," which is also set out in the complaint, alleging damages in the sum of $8,500 for the loss of future profits under that agreement.

The third cause of action alleges damages because of the forfeiture and cancellation of "Distributor's Exclusive Territory and Participation Agreement" in the sum of $1,500.

A jury had been demanded by appellant as for a law action and granted by the court. After the jury had been impanelled and sworn, appellant asked that the action be tried by the court without a jury, thereby waiving a jury, to which respondents consented. The jury was accordingly discharged and the case tried by the court, which made findings of fact, conclusions of law and judgment.

Appellant asserts that the action is one in equity as being one in the nature of accounting. Although it involved a great many accounts and exhibits and would have been one very difficult to try to a jury, it is not an action in equity but one in law for damages.

Among other material findings made by the trial court were, in substance: That, on August 1, 1930, appellant entered into the distributor's contract with W. E. Earl and E. E. Earl and on the same day entered into the operator's agreement with them; that W. E. Earl and E. E. Earl commenced operations under those contracts and paid to appellant the sum of $2,500 as an advance under the distributor's agreement and

the sum of $5,287.50 as advance rental under the operator's agreement; that the distributor's contract provided that one twenty-fifth of such deposit should be deducted for each year that the distributor's contract was in effect, so that the amount of deposit at the date of the attempted cancellation was $2,300; and the operator's agreement providing for ten cents rent per canteen per month should be deducted from the deposit, so that the deposit under the operator's contract as of the date of the attempted cancellation was $3,778.07.

Thereafter, W. E. Earl and E. E. Earl formed the domestic and the Oregon corporation for the purpose of taking over the operations under the distributor's and operator's agreements, and on November 14, 1931, duly assigned and transferred to the Washington corporation, and on the same date duly assigned and transferred to the Oregon corporation, so much of such agreements as related to the business in each state; that such assignments were consented to in writing by appellant on December 26, 1931, and transmitted to respondents through one J. C. Corbin, by a letter dated December 28, 1931, and respondents assumed and agreed to pay appellant the then indebtedness of W. E. Earl and E. E. Earl; that respondents continued to operate and conduct business for appellant under the distributor's and operator's agreements and to furnish merchandise from appellant and to rent canteens from it and to operate and develop their business as operator in Seattle and Portland.

On March 9, 1932, respondents were indebted to appellant for merchandise purchased, for protest fees and freight on merchandise, in the sum of $4,936.44, and were further indebted on account of the loss of thirty-four machines in the sum of $544; that, prior to March 9, 1932, one J. C. Corbin advanced to W. E.

Earl and Francelle Earl, his wife, large sums of money, upon which there was due on that date the sum of $12,117.99; and to secure the payment of that sum, and as collateral security therefor, W. E. Earl sold and transferred to Corbin fifty-one per cent of the capital stock of respondents, by an instrument dated February 20, 1932, the transfer being made pursuant to an oral agreement theretofore made; and that W. E. Earl gave to Corbin a power of attorney to vote the stock so transferred, as well as all stock owned or standing in the name of W. E. Earl, in respondents.

Each corporation had one hundred shares of stock. Francelle Earl owned forty-eight shares of capital stock of the Washington corporation; one share was owned by a Miss Hansley, and fifty-one shares were owned by W. E. Earl, subject to the pledge of J. C. Corbin. Francelle Earl owned one share of the Oregon corporation; one share was owned by Miss Hansley and ninety-eight shares were owned by W. E. Earl subject to the pledge to J. C. Corbin and a power of attorney to vote all of such shares. Appellant had notice of the rights of J. C. Corbin.

The court further found that, on March 5, 1932, respondents became in default under the distributor's contract, but by the conduct and acts of appellant all such defaults were waived; and respondents likewise became in default under the operator's agreement, but no notice of intention to declare a forfeiture was given to respondents or Corbin, and appellant accepted payments under the agreement from respondents after the due dates thereof and granted other extensions, thereby waiving strict performance of the contract; and notwithstanding the waiver of such defaults and such forfeitures, appellant wrongfully and illegally and in collusion with W. E. Earl and Francelle Earl attempted to forfeit and cancel the

rights of respondents in the distributor's and operator's agreements in the following manner:

That, on March 9, 1932, appellant, through and by its comptroller and assistant secretary, F. H. Anderson, without either oral or written notice prior thereto, or an opportunity to perform and without having made previous demand, either oral or written, and with the full knowledge that J. C. Corbin was in Seattle for the purpose of attending the meeting of the stockholders, claimed to have delivered to W. E. Earl, president of both respondents, notices of cancellation and forfeiture of the distributor's and operator's agreements; and the same day, W. E. Earl and Francelle Earl, individually, and as president and vice president, respectively, of both respondents, signed a written consent to the forfeiture and cancellation of the distributor's and operator's agreements. That no notice of any attempted forfeiture and cancellation of the distributor's or operator's agreements was given to Corbin until about March 23, 1932; and no written notice of cancellation of the distributor's agreement was given to respondents at the address of either of those corporations, or at the address stated in the distributor's agreement, nor was any notice by registered mail of the termination of the operator's agreement cancellation given to either corporation, as provided in the agreement.

The court also found that the attempted forfeiture and cancellation of the distributor's and operator's agreements were not in good faith, but that the plan was carried out pursuant to an agreement between appellant and Earl and wife for the purpose of defeating the rights of Corbin in the capital stock of respondents and of restoring the territory covered by the distributor's and operator's agreements to appellant; and pursuant to that plan, on March 9, 1932,

138

appellant took over and converted to its own use all of the property and assets of respondents (which is then listed and described in the finding). The court further found that the total market value of such property and assets of respondent converted by appellant was the sum of three thousand dollars; and that appellant employed W. E. Earl to work for it in the management and operation of such business throughout the territory covered by the distributor's and operator's agreements; and the attempted cancellation and conversion completely destroyed the business of respondent corporations and all future opportunity to pursue the same.

Upon the foregoing summarized findings of fact, the trial court entered conclusions of law that appellant is not entitled to recover against respondents on its cross-complaint; that appellant wrongfully and illegally cancelled and forfeited the distributor's and operator's agreements; that respondents are entitled to recover from appellant the sum of three thousand dollars, representing the fair market value of the property and assets converted, and the additional sum of $2,300, as the deposit made under the distributor's agreement, or a total of $5,300. Judgment was entered accordingly.

Appellant appeals from the judgment allowing the recovery on the third cause of action against it and for refusing to grant appellant judgment on its cross-complaint, upon which it demanded judgment for alleged unpaid balances amounting to about $4,620 and to considerable sums for rent of such portion of its canteens as the final determination of the case should show to have been in the possession of respondents. Respondents also cross-appeal from the judgment denying them recovery upon their first and second

causes of action. We shall, however, for brevity, refer to them only as respondents.

No good purpose could be served by detailing and reviewing the testimony and documentary evidence shown in the record upon the issues of fact. We have long followed the rule that, unless the evidence preponderates against the findings of the trial court in a law case, they will be treated as verities and not disturbed. *Petro Paint Mfg. Co. v. Taylor*, 147 Wash. 158, 265 Pac. 155; *Brewster v. State*, 170 Wash. 422, 16 P. (2d) 813; *Puget Sound National Bank v. Olsen*, 174 Wash. 200, 24 P. (2d) 613; *Sears, Roebuck & Co. v. Nilsen*, 175 Wash. 237, 27 P. (2d) 128.

A sufficient examination of the record convinces us that the evidence did not warrant the court in finding for appellant upon its cross-complaint. There could be but little question under the evidence but that the attempted cancellation and forfeiture of the contracts by the Earls and appellant were collusive and not in good faith, as the court found.

Upon the cross-appeal of respondents based upon the denial of any recovery of damages for loss of future profits under the distributor's and operator's agreements, the trial judge stated:

"As to the plaintiff's first and second causes of action, wherein plaintiff seeks to recover damages against the defendant under the so-called distributors' and operators' contracts, the court holds that there was a breach of such contracts by the defendant. While it is true, as contended by counsel for the plaintiff, under the decisions of our Supreme Court, that future profits may be recovered as damages upon the breaches of such contracts as here under consideration, and that the same are to some extent uncertain and problematical and can not for that reason be determined with mathematical nicety, they, however, must be 'more definite and certain than mere speculation and conjecture.'

"They must be shown 'with a reasonable degree of accuracy,' and 'the testimony must be clear and free from taint of speculation or conjecture.'

"The court holds that plaintiff's loss of anticipated profits by reason of the breach by the defendant of said contracts has not been shown with that reasonable degree of accuracy that the law requires, and that the same is too conjectural and speculative to justify any damages therefor."

Respondents contend that the undisputed evidence in this case on the matter of future profits disproves and is overwhelmingly contrary to the above finding.

A computation is made, based upon a summary made by respondents' bookkeeper from the books of appellant, upon which it is asserted that, under the distributor's agreement up to the end of February, 1932, or about nine days prior to the cancellation of that agreement, commissions were earned under that agreement in excess of an average of $113 per month. The distributor's agreement had an unexpired period of twenty-three years and eight months. It is argued that, even allowing for depreciation of profits from $113 per month to $100 per month, the loss would exceed $27,600; or, if still lower to $75 per month, the loss to respondents would greatly exceed $20,000, which was the amount for which they prayed damages for loss of anticipated profits under that contract.

It is also contended that, under the operator's agreement, according to a summary taken from respondent's books, in accordance with an estimate made by Anderson, comptroller and assistant secretary of appellant, a loss of only $9.52, for but one month, January, 1932, was shown; and that the average gross sales from August, 1931, until the end of February, 1932, amounted to $2,843.96, or an average of $257.02 net profit per month. It is argued that, since the operator's agreement had twenty-three

years and eight months to run until its expiration from the time of its wrongful breach, the total damages claimed for the breach of that agreement of $8,500 was greatly exceeded.

Here, again, the trial court not only had the advantage of hearing the witnesses who personally testified, as well as examining the documentary evidence, but had the undoubted right to believe or disbelieve any part of the oral testimony where it was in conflict. Such book calculations are illusory, and particularly so when applied to future profits for an indefinite time, or for such a long term as more than twenty-three years. They are subject to many contingencies.

However, Corbin, himself, who had become the controlling factor in the two respondent corporations, showed by his correspondence with officers of appellant, that he never had much faith in the permanency or solvency of respondents or their businesses. His belief always was that nothing but the most careful supervision of their businesses could ever enable them to make profits. In other words, anticipated profits, even in his opinion, were extremely conjectural. The two corporations were practically insolvent at the time of the breaches of the two contracts.

It is quite true that prospective profits are ofttimes speculative, indefinite and problematical, but if there is a reasonable certainty as to some certain profits they need not be computed with mathematical accuracy. Most contracts are entered into with a view to future profits, but they must be shown with reasonable certainty and shown that they were reasonably certain to have been made had not the breach occurred. *Federal Iron and Brass Bed Co. v. Hock,* 42 Wash. 668, 85 Pac. 418; *Belch v. Big Store Co.,* 46 Wash. 1, 89 Pac. 174.

That is what the trial judge probably meant in find-

ing that the anticipated profits by reason of the breach by appellant of the two contracts had not been shown with that reasonable degree of accuracy that the law requires, and that the same were too conjectural and speculative to justify any damages therefor. In connection therewith, he cited *Brinnon Logging Co. v. Carlsborg Mill & Timber Co.,* 122 Wash. 483, 210 Pac. 945; *Schermerhorn v. Sayles,* 123 Wash. 139, 212 Pac. 156; *Pearce v. Puget Sound Broadcasting Co.,* 170 Wash. 472, 16 P. (2d) 843; and *Blakiston v. Osgood Panel & Veneer Co.,* 173 Wash. 435, 23 P. (2d) 397, as sustaining that principle. Those cases plainly sustain the ruling of the trial court by what they allow and disallow in the matter of recovering anticipated profits.

The facts in the instant case make it somewhat akin to the case of *Andreopulos v. Peresteredes,* 95 Wash. 282, 163 Pac. 770. In that case, the business had not become a well established business. Profits which were estimated upon the sale of certain quantities of cigars and cigarettes, if sold, being merely matters of opinion, subject to contingencies and conjectural, were disallowed. Cf. *Schultz v. Wells Butchers' Supply Co.* 151 Wash. 382, 275 Pac. 737.

We conclude that the trial court was correct in refusing damages upon the first and second causes of action set out in respondents amended complaint.

It follows that the judgment of the trial court is affirmed both upon the principal appeal and the cross-appeal by respondents.

MILLARD, C. J., BLAKE, MITCHELL, and STEINERT, JJ., concur.