[No. 26080. Department Two. August 20, 1936.]

WILLIAM S. TOWNSEND, *Respondent*, v. LEWIS N. ROSENBAUM *et al.*, *Appellants*, WILMINGTON TRUST COMPANY, *Respondent*.[1]

[1]Reported in 60 P. (2d) 251.

*Colvin & Rhodes,* for appellants.
*Preston, Thorgrimson & Turner,* for respondents.

HOLCOMB, J.—Respondent brought this action against A. C. Frost, Lewis N. Rosenbaum, Rosenbaum Properties, Inc., a corporation, L. Rein, The Newman Corporation, a corporation, and Wilmington Trust Company, a corporation, as defendants, to recover an alleged balance of five thousand dollars due on a real

estate contract made between Townsend and Frost of lots 1 and 2, block 31, Plat of the Second Addition to the Town, now City, of Seattle, as laid off by the heirs of Sarah A. Bell, deceased, located at Ninth avenue and Pike street.

Appellants Rosenbaum and Rein are residents of New York state, the Wilmington Trust Company is a Delaware corporation, and The Newman Corporation and Rosenbaum Properties, Inc., are domestic corporations.

No relief was asked against the Wilmington Trust Company, the complaint alleging that it had been asked to become a party plaintiff and refused. All defendants, except Frost, appeared in the action. No judgment was entered against Frost, and he was a witness for respondent at the trial.

All appellants denied liability, pleaded prior rescission of the contract and failure to tender a marketable title, and asked that this suit be stayed pending the outcome of a prior suit brought in New York by Rosenbaum, against the Wilmington Trust Company, involving the same questions as litigated here; and in the alternative, if the stay order be not granted, asked, by cross-complaint against the Wilmington Trust Company and respondent, for rescission of the real estate contract and recovery of the amount paid on the purchase price. At the trial, a voluntary nonsuit was asked as to the cross-complaint.

No more concise and accurate statement of the issues of fact and law in the case can be made than by setting forth in full the forty findings of fact and thirteen conclusions of law made by the trial court.

"FINDINGS OF FACT

I

"At all the times in these findings mentioned, the defendant Rosenbaum Properties, Inc., was and is a

corporation created under the laws of the State of Washington, and the Newman Corporation was and is a corporation created under the laws of the State of Washington.

## II

"At all the times in these findings mentioned the defendant Wilmington Trust Company was and still is a corporation created under the laws of the State of Delaware, and having its place of business at the City of Wilmington in said state. At all of said times it was and is a trust company empowered by the laws of the said state of its creation to act as trustee and to execute and perform trusts created by will covering real property and covering personal property, whether such real property is situated within or without, or partly within and partly without, the State of Delaware.

## III

"The defendant The Wilmington Trust Company has never filed certified copy of its Charter or Articles of Incorporation in the office of the Secretary of State of the State of Washington. It has never appointed a statutory agent in or for the State of Washington. It has never paid any license fees to the State of Washington.

## IV

"On the 25th day of July, 1922, John T. McChesney was a resident of the City of Everett, County of Snohomish, in the State of Washington, and at that time owned a considerable estate consisting in the main of personal property situated in said county. A comparatively small part of his estate consisted of real property, part of it situated in the County of King, State of Washington, part of it in the said County of Snohomish, and part of it in the County of Clallam, State of Washington. The said property situated in the County of King was that certain parcel of land described as:

"Lots 1 and 2 in Block 31, Plat of the Second Addition to the Town (now city), of Seattle, as laid off by the heirs of Sarah A. Bell, deceased, saving and except-

ing that portion of said Lot 1 theretofore condemned and appropriated by the City of Seattle for the widening of Pike Street.

V

"On the day last named, the said John T. McChesney executed his last will and testament, whereby he specifically devised to his wife Clara B. McChesney the greater part of his real estate situate in said Snohomish County, and whereby he devised to his said wife, an undivided ¼ part of the residuum of his estate, and the remaining undivided ¾ of said residuum to the defendant Wilmington Trust Company as trustee, to hold, invest and reinvest the property so devised to it, and to pay over to their three children the income therefrom, and ultimately the principal thereof, with power to hold the same so long as in its discretion it should deem advisable, and to sell at any time any or all of the same. The remainder of his real estate became a part of the residuum of his estate.

VI

"The said John T. McChesney died in the City of Everett in the month of September, 1922, whereupon proceedings were had in the Superior Court of the State of Washington for said Snohomish County for the probate of his will and the administration of his estate, said court having general probate jurisdiction under the laws of the State of Washington, and having jurisdiction of the said McChesney estate because at the time of his death the testator resided there and owned property there situate. His said will was admitted to probate and decreed to be his last will and testament, and to have been executed in due form of law. The said will and estate were administered in said probate proceedings and on the third day of November, 1923, the executors of his will filed in said probate court their final account and petition for distribution. Thereupon said Superior Court entered an order fixing the 10th day of December, 1923, as the time for the hearing of said account and petition. Due notice of said hearing was given as required by law, and by the order of said court, and the posting and publication of

notice of said hearing was made and due proof thereof filed in said court, all as required by the laws of the State of Washington. On said December 10, 1923, said petition for distribution was heard by the court, and on that day a decree of distribution was entered. At that time the said parcel of land situate in King County remained a part of the estate of said decedent. By the terms of said decree of distribution an undivided ¼ of the residuum of said estate (including said parcel of land situated in King County), was distributed to the said Clara B. McChesney, and an undivided ¾ thereof to the defendant Wilmington Trust Company upon the trust created by said will. On the 15th day of April, 1926, an order was made and entered by said court discharging the executors and closing the estate.

## VII

"Thereupon the defendant trust company accepted said trust and entered upon the performance of the same. All of the personal property so bequeathed to the Wilmington Trust Company in trust, was at once transferred to its possession in said City of Wilmington, and has since so remained, except to the extent it has sold therefrom and reinvested the proceeds, and all reinvestments have always been in the possession of the Wilmington Trust Company at its said office in the City of Wilmington.

## VIII

"Thereafter, on the 12th day of April, 1924, the defendant trust company and the said Clara B. McChesney conveyed by deed to the plaintiff the said parcel of land situated in King County, he then, since then and now being a bachelor.

## IX

"The intent of the parties to said conveyance was to vest the title to said property in the plaintiff as trustee for the parties interested therein, to-wit: An undivided ¼ for the said Clara B. McChesney, and an undivided ¾ for the defendant Wilmington Trust Company as trustee for the said three children of said John T. Mc-

Chesney. Said conveyance was made in good faith and as a convenience in making sale of said real estate. This was in accordance with the practice of the trust company then, theretofore and thereafter obtaining, especially applicable to cases where there existed undivided ownership.

X

"At about the time last referred to, the plaintiff executed a deed of conveyance of said real property to the defendant Wilmington Trust Company. The last mentioned deed was placed by the Wilmington Trust Company in its vaults as a part of the files of said trust estate and has never been recorded. The intent of the parties to the last mentioned deed was not to presently vest title to the property described therein in the defendant Wilmington Trust Company, but only to serve the purpose of protecting the said Clara B. McChesney and the defendant Wilmington Trust Company, and the said children of John T. McChesney, in case the plaintiff should die or become incapacitated. This transaction was in accord with the practice of the defendant trust company then, theretofore, and thereafter obtaining in transactions of that character, and was done in good faith and as a prudent safeguard of the interests of the said Clara B. McChesney and the Wilmington Trust Company as trustee for the said three children of John B. McChesney.

XI

"That during the administration of the estate of said John T. McChesney, his executors listed the said real property for sale with a real estate broker located at the City of Seattle, and at the time the decree of distribution was rendered the same remained so listed for sale. On the 10th day of January, 1925, the said broker found a purchaser for said property, to-wit, the defendant, A. C. Frost, and on the 10th day of January, 1925, the plaintiff entered into a contract for the sale of same to said defendant Frost, wherein and whereby the plaintiff agreed to sell and convey, and the purchaser agreed to purchase and pay for said parcel of land. The purchase price was the sum of $50,000, of

which $1,000 was paid in cash, $4,000 was to be paid on or before May 10, 1925, $5,000 on or before November 10, 1925, and $40,000 on or before January 1, 1930, the deferred payments to draw interest at the rate of 6% per annum payable semi-annually, and the purchaser being obligated to pay all taxes (including the general tax for the year 1924), and all special assessments which should become a lien upon the property after the date of the contract, all the said taxes and assessments to be paid before delinquency thereof. The said contract further provided that for default on the part of the purchaser the contract might be forfeited and determined at the election of the plaintiff. It also contained a provision 'that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.'

## XII

"The first two payments, to-wit, $1,000 and $4,000, were made by the defendant Frost. The next payment ($5,000) was made by the defendant Rosenbaum.

## XIII

"On the 6th day of June, 1925, the defendant Frost and his wife assigned said contract to one D. H. Traphagen, the instrument of assignment describing the contract, reciting the covenant in said contract contained on the part of the plaintiff to sell the property to the defendant Frost 'upon certain terms and conditions therein stated.' Said assignment ran to said Traphagen and to his heirs and assigns.

## XIV

"Thereafter, on October 17, 1925, the said Traphagen and wife assigned the contract to the defendant Rosenbaum. This assignment was in the form described in finding No. XIII.

## XV

"Thereafter, on November 4, 1925, the defendant Rosenbaum and wife assigned to the defendant Rein

an undivided ½ interest in said contract. This assignment was in the form described in finding No. XIII.

## XVI

"Thereafter, on December 20, 1928, the defendant Rosenbaum and wife assigned an undivided ½ interest in said contract to the defendant Rosenbaum Properties, Inc. This assignment was in the form described in the foregoing finding No. XIII.

## XVII

"Thereafter on February 24, 1934, the defendant Rosenbaum Properties, Inc., assigned the contract to the defendant The Newman Corporation. This assignment was in the form described in the foregoing finding No. XIII.

## XVIII

"On the 24th day of February, 1934, the defendant Rein assigned said contract to the defendant The Newman Corporation. This assignment was in the form described in the foregoing finding No. XIII.

## XIX

"Later, supposedly on August 10, 1934, the Newman Corporation assigned said contract to the defendant Rosenbaum. The terms and conditions of this assignment are not known to the court. The plaintiff made timely demand upon the main defendants for the production of said instrument at this trial, but said demand was not complied with.

## XX

"The payment of $40,000 due under said contract on January 1, 1930, became delinquent and at the request of the defendant Rosenbaum, an extension was granted on January 14, 1930, to the defendants Rosenbaum Properties, Inc. and Rein on the following terms: The rate of interest was increased from 6% to 8% per annum. $1,000 'shall be paid on account of principal on or before February 1, 1930, and a like sum on or before the first day of March, April, May, June, July,

August, September, October, November and December, 1930, and the remainder, to-wit, $29,000, on or before the first day of January, 1931. All the other terms and conditions in said contract to be and remain as therein set forth.' This instrument of extension was signed by the plaintiff; by the defendant Rosenbaum Properties, Inc., by L. M. Rosenbaum, President; and by the defendant Rein.

## XXI

"On the 23rd day of January, 1931, another default occurred in the promised payments, both as to principal and interest. On that date another extension was granted to the defendants Rosenbaum Properties, Inc. and Rein, until June 30, 1931, 'in which to pay the balance due.' The terms of the extension were that the interest in arrears, together with $1,000 on principal 'will be paid on or before February 1, 1931, and a payment of $1,000 on the principal, together with interest becoming due on the contract, will be made on or before the first day of March, April, May and June, 1931, and the remainder, to-wit: $23,000, together with interest to date, on or before June 30, 1931.' This extension was also signed by the plaintiff, the defendant Rosenbaum Properties, Inc. by the defendant Rosenbaum, President, and the defendant Rein.

## XXII

"A new default occurring, a further extension of time was granted, and on July 27, 1933, the defendant Rosenbaum made a request that the amount of principal then delinquent, to-wit, the sum of $24,101.37, be reduced to the sum of $10,000, he offered to pay said sum of $10,000 in two instalments of $5,000 each, the first payment to be made in thirty days, and the remaining $5,000 on or before six months. This proposition was accepted by the plaintiff with additional indulgence, to-wit: That the payment of the first $5,000 need not be made until September 1, 1933, and the second on or before March 1, 1934. The total paid to date on account of the principal (including the sum of $5,000 paid by the defendant Frost) was the sum of $30,-

898.65, and on account of interest the sum of $18,219.24, of which some part was delinquent interest.

## XXIII

"On August 23, 1933, the first payment of $5,000 was made. No other payment on account of the principal has been made, and at the time of the commencement of this action there was unpaid the said sum of $5,000 with interest from the first day of March, 1934, at the rate of 4% per annum, (the rate of interest having been in the meantime reduced from 8% per annum to 4% per annum by mutual agreement).

## XXIV

"The defendants Rosenbaum Properties, Inc. and the Newman Corporation, were throughout but instrumentalities of the defendant Rosenbaum.

## XXV

"All moneys received by the plaintiff on account of the principal or interest under said contract were turned over by him, immediately when received, to the defendant Wilmington Trust Company, and by it distributed to the defendant beneficiaries entitled thereto.

## XXVI

"Out of all distributions made by the defendant Wilmington Trust Company, it deducted its own compensation for handling the property held by it in trust.

## XXVII

"The main defendants allowed the taxes and special assessments accruing upon said parcel of land to become delinquent. Then the defendant Rosenbaum requested the privilege of making monthly remittances of $500.00 to the defendant trust company to be applied toward the payment of the delinquent taxes and assessments. This request was granted, and thereafter he remitted eight monthly payments of $500.00 all of which was applied by the defendant Wilmington Trust Company, by direction of the defendant Rosenbaum, toward the payment of such delinquent taxes

and assessments, except the sum of $18.59. The defendant Wilmington Trust Company opened a special account for these remittances and disbursements for taxes and assessments, and the said balance of $18.59 remains to his credit on said account.

## XXVIII

"The present amount of delinquent taxes and assessments upon said property aggregates, with interest, the sum of about $38,000.

## XXIX

"The total amount of taxes, (exclusive of interest) and of special assessments, (including current interest) which accrued against said property since the execution of the Frost contract amount to the sum of $39,932.67.

## XXX

"At the time the said Frost contract was entered into, the defendant Frost was put in possession of said parcel of land, and he and his successive assignees have been from that time on continuously in undisturbed possession of said parcel of land. At the time of the commencement of this action, and at the time of the commencement of the New York action hereinafter referred to, such possession continued. At the present time a tenant of the defendant Rosenbaum is and for some years has been in possession of said parcel of land on a month to month tenancy, the rent payable monthly in advance. The rent for the month of September, 1935, was paid by said tenant to the defendant Rosenbaum on September 1, 1935. Under the terms of the tenancy, the tenant has, at the expiration of the term, the right to remove from the premises certain equipment owned by such tenant. No tender of possession was ever made by the main defendants or either of them until the filing of the cross-complaint in this action (August 29, 1935). An offer was made therein to deliver such possession and on the trial of the case that offer was renewed, but neither of the main defendants was at the time of said offers, able and no one or all of them are now able, to deliver such possession.

## XXXI

"The evidence shows the amount of rents collected by the main defendants from the said parcel of land for a period beginning with the month of April, 1928, and extending to and including the month of September, 1935, was the sum of $30,303.30, and the amount of rents previously collected by the main defendants is estimated at the sum of $7,000.00. If the rents collected had been applied toward the payment of taxes and assessments prior to delinquency thereof, there would have been at the present time little if any delinquent taxes or assessments against the said property. The present market value of the property (unencumbered) is $30,000. If the main defendants had paid the said sum of $5,000, and had applied the rents to payment of taxes and assessments when due, then loss to said defendants at the present depressed market would only slightly exceed the sum of $7,500.00.

## XXXII

"On the 5th day of April, 1934, while the defendant The Newman Corporation was the nominal holder of said contract, the plaintiff executed and tendered to the defendant The Newman Corporation a deed of said property in accordance with the terms of said contract, and demanded the payment of said sum of $5,000, with interest then accrued and unpaid, but the defendant The Newman Corporation and the defendant Rosenbaum refused to accept said conveyance and gave notice that said contract was rescinded, but no tender of payment, no demand for conveyance, and no request for perfecting of title was ever made. Later, after having been informed by the defendant Rosenbaum that the contract had been assigned by the Newman Corporation to him, the plaintiff duly executed and acknowledged a deed of conveyance of said parcel of land to him, in accordance with the terms and provisions of said contract, and at the same time the plaintiff tendered to the defendant Rosenbaum a deed of said property from the defendant Wilmington Trust Co. to said Rosenbaum, both to be delivered upon payment of the amount then delinquent on said contract, to-wit, the

sum of $5,000 plus accrued interest. These deeds the defendant Rosenbaum refused to accept.

## XXXIII

"In refusing said tenders, the defendant Rosenbaum based his refusal upon some technical grounds which the evidence shows did not in fact exist, and also upon the main ground that the defendant trust company was incapacitated to take said property or hold the same in trust because it had not filed its Articles of Incorporation in the office of the Secretary of State of the State of Washington, and had not appointed a statutory agent, and that therefore, having no right to receive or hold the property, its conveyance to the plaintiff conveyed to him no title and the tendered deeds would convey no title.

## XXXIV

"On the 18th day of July, 1935, the defendant trust company executed a new deed of the property to the plaintiff, expressly reaffirming and approving the earlier conveyance, and at the same time the plaintiff executed a new deed of the property to the defendant Rosenbaum. These two deeds, together with certified copies of resolutions of the Board of Directors of the defendant Wilmington Trust Co., approving the original conveyance to the plaintiff, and the deed previously tendered and also the two latter deeds, the plaintiff shortly thereafter, and prior to the trial of this action, deposited in the registry of this court with notice to the defendant Rosenbaum that they were so deposited for his benefit.

## XXXV

"Upon the trial of this case, the plaintiff tendered to the defendant Rosenbaum a deed of conveyance of said property duly signed, executed and acknowledged by the said three children of John T. McChesney, deceased, conveying said property to the defendant Rosenbaum. At the same time, the plaintiff, during the trial, made a new tender of the deed to the Newman Corporation first tendered, of the two deeds tendered to the defendant Rosenbaum and of the two deeds

which had been placed as aforesaid in the registry of this court.

## XXXVI

"That in the month of August, 1934, the defendant Rosenbaum commenced an action in the Supreme Court of the State of New York, County of Kings, wherein he was sole plaintiff, and the defendant herein Wilmington Trust Co. was sole defendant, in which he sought to recover judgment against the defendant in that action in the sum of $98,985.01. In that action, the plaintiff pleaded the ownership of said parcel of land by John T. McChesney at the time of his death, the making by said McChesney of his will as hereinbefore found, the distribution of an undivided ¾ of the residuum of his estate to the defendant Wilmington Trust Co., the conveyance of said company to the plaintiff, the making of the said Frost contract and the various assignments thereof, and the making of the several payments on account of the contract price (principal and interest) and the disbursement of sums for the payment of taxes and assessments, all alleged to aggregate, with interest thereon, the said sum of $98,985.01. The basis of said claim set forth in said New York complaint was the alleged failure of title of the defendant trust company and of the plaintiff for the reason that the trust company had not domesticated itself in the State of Washington. Said New York action was later removed upon the petition of the defendant therein to the United States District Court, and is there now pending. The facts aforesaid in regard to the prior institution and the pendency of said New York action are pleaded in the several answers of the main defendants in this action, accompanied by an application for a stay of proceedings in this action until the determination of the New York action.

## XXXVII

"That at all times since the assignment of the Frost contract by Traphagen to the defendant Rosenbaum, he and his defendant corporations and the defendant Rein have well known the plaintiff, under the conveyance to him of said parcel of land by the defendant

Wilmington Trust Company, in his making the Frost contract, and in the granting of extensions as aforesaid, and in the collection of principal and interest on that contract, was acting on behalf of the defendant Wilmington Trust Company, and ultimately the said three children of the said John T. McChesney as to an undivided ¾ of said tract of land, and for the said Clara B. McChesney, and since her death for her devisees (her three children hereinbefore in these findings referred to), as to an undivided ¼ thereof.

## XXXVIII

"That years before the commencement of the New York action, the defendant Wilmington Trust Company disposed of all real estate, which by the will of John T. McChesney passes as part of the residuum of said estate to the defendant Wilmington Trust Co., and since the time of the commencement of the New York action and for a period of years prior thereto, the defendant Wilmington Trust Co. held no title or possession to any part of said real estate so devised by the will of said John T. McChesney and since the disposition of said real estate the defendant Wilmington Trust Company has done no act or business in the State of Washington as trustee under said will.

## XXXIX

"On the 22nd day of March, 1932, the said Clara B. McChesney died, being at the time of her death a resident of the County of Snohomish, State of Washington, and at that time owning real and personal property situate in said county. Thereupon proceedings were had in the Superior Court of said Snohomish County whereby the last will and testament of said Clara B. McChesney was probated and established to be her last will and testament, and the said proceedings resulted in the full administration of her estate and the distribution by said Superior Court of the residuum of her estate as follows:

"An undivided ⅓ thereof (including an undivided 1/12 of said Frost contract) to a daughter of the said McChesneys; an undivided ⅓ of said residuum, includ-

ing a 1/12 interest in said Frost contract to another daughter of the said McChesneys; and an undivided ⅓ thereof to the defendant Wilmington Trust Co. in trust for Frank W. McChesney, son of the said McChesneys, with full power on the part of said trust company to sell, invest and reinvest the proceeds of sales. The only real estate owned by the said Clara B. McChesney at the time of her death was her home place in Everett, and immediately upon the said distribution the defendant Wilmington Trust Co. conveyed away the ⅓ of said real estate so distributed to it in trust. The greater portion of the estate of Clara B. McChesney consisted of securities. The trust portion of these securities were immediately, upon such distribution, transferred into the possession of the defendant Wilmington Trust Company at Wilmington, Delaware, where they have since remained.

## XL

"Prior to the trial the plaintiff, in timely season, demanded of the main defendants that they furnish a bill of particulars of the items of damage set forth in the cross-complaint; also to produce at the trial the minute books and stock certificate books of the defendant Rosenbaum Properties, Inc., also the abstract of title; also interrogatories, including one in regard to said abstract of title as to when and from whom received. To these no response has been made by said defendants, except that during the argument of counsel upon the motion for non-suit, the abstract of title (brought down to date) was furnished by them and deposited in the registry of the court."

## "CONCLUSIONS OF LAW

## I

"That at the time of the commencement of this action, and for years prior thereto, the plaintiff was and now is a trustee in good faith of an express trust within the meaning of Sec. 180 of Remington's Revised Statutes of Washington, and entitled to commence and maintain this action as plaintiff therein.

## II

"That at the time of the commencement of this action and since then, and for years prior thereto, the defendant the Wilmington Trust Co., has not been doing business in the State of Washington within the meaning of the statutes of said state relating to foreign corporations.

## III

"That if the defendant the Wilmington Trust Co. was ever doing business in the State of Washington within the meaning of the Washington Statutes last referred to, it ceased doing such business years prior to the commencement of this action, and prior to the year 1929.

## IV

"That the defendants Rosenbaum, Rosenbaum Properties, Inc., L. Rein and the Newman Corporation have assumed the obligations imposed upon the defendant Frost by said contract between the plaintiff and said defendant Frost of date January 10, 1925.

## V

"That when the plaintiff tendered to the defendant Rosenbaum and to the defendant The Newman Corporation a deed of conveyance to the defendant The Newman Corporation of the real property covered by the said Frost contract, he had good and unencumbered title to said property, and his deed of conveyance, if accepted, would have conveyed good and marketable title to the grantee.

## VI

"That when on November 13, 1934, the plaintiff and the defendant Wilmington Trust Company tendered deeds of said property to the defendant Rosenbaum said deeds would have conveyed to the grantee therein good and marketable title to said property.

## VII

"That the deeds deposited in the registry of this court one of them from the defendant Wilmington

Trust Co. to the plaintiff, and one from the plaintiff to the defendant Lewis N. Rosenbaum, will, if accepted, convey to the grantee therein good and marketable title to said property.

## VIII

"That if there were any questions in regard to good and marketable title being conveyed by the several deeds in these conclusions before referred to, the deed tendered in open court by the plaintiff running from the three children of John T. McChesney, deceased, to the defendant Rosenbaum, would, if accepted, render the title conveyed thereby not only good and marketable, but impregnable.

## IX

"That the rescission of said Frost contract attempted by the said defendant Lewis N. Rosenbaum at or about the time of the tender of the first deed from the plaintiff to the defendant The Newman Corporation, was not effectual, and did not accomplish a rescission of said contract. Especially on account of the retention then and thereafter up to the present time by the defendant Rosenbaum of the possession of said parcel of land, and also because of the fact that at all of said times the defendant Rosenbaum was incapable and is now incapable of delivering possession thereof. Said Frost contract is still in full force and effect.

## X

"That for this court to grant a stay of proceedings of this case pending the determination of the New York case would be an abuse of discretion.

## XI

"That the equities of this case are with the plaintiff, and there are no equities in favor of the defendants Rosenbaum, Rosenbaum Properties, Inc., L. Rein, and The Newman Corporation, or any of them.

## XII

"That the plaintiff is entitled to judgment against the defendants Rosenbaum, Rosenbaum Properties,

Inc., L. Rein, and The Newman Corporation, and each of them, for the sum of $5,000 with interest thereon from the last day of March, 1934, at the rate of 4% per annum and for the plaintiff's costs and disbursements in this action.

## XIII

"That the defendants Rosenbaum, Rosenbaum Properties, Inc., L. Rein and The Newman Corporation, are not, nor is any of them, entitled to any relief in this action against the plaintiff or the defendant Wilmington Trust Company, nor entitled to judgment against the plaintiff or the defendant Wilmington Trust Co., upon the cross-complaint or otherwise in any sum of money whatsoever."

Appellants have assigned error as to only nine of the findings and all of the conclusions of law.

No evidence whatever was introduced by or on behalf of any of appellants. Although the briefs of appellants are long and discursive, they contain no discussion of any specific finding of fact. The action was begun as one at law, which by the answers and cross-complaint of appellants, was converted into a suit in equity.

The burden is not upon this court as an appellate court, but upon appellants, to show that any finding was contrary to a preponderance of the evidence. There is no such disclosure shown in the briefs, and we shall not search for any. The law is well settled here that, unless this court discovers a preponderance of evidence against the findings, they are never disturbed, but are treated as verities. *Automatic Canteen Co. of Washington v. Automatic Canteen Co. of America,* 182 Wash. 133, 45 P. (2d) 41. The rule is the same where the action was brought at law and converted into an equity case. *Trout v. Shelikoff Packing Co.,* 179 Wash. 414, 38 P. (2d) 348.

Twenty-two errors are assigned by appellants, which

they argue under seven points. Too much space is needed to discuss but briefly the most pertinent and important legal questions. We cannot review the many questions and cases submitted by counsel.

■ The first point argued by appellants is that respondent cannot maintain this action because he is not the real party in interest. Findings IX and X, not now to be disputed by appellants, fully sustain the first conclusion that, at the time of the commencement of this action and for years prior thereto, respondent was and now is a trustee in good faith of an express trust within the meaning of Rem. Rev. Stat., § 180 [P. C. § 8256], and entitled to commence and maintain this action.

Rem. Rev. Stat., § 180, reads:

"An executor or administrator, or guardian of a minor or person of unsound mind, a trustee of an express trust, or a person authorized by statute, may sue without joining the person for whose benefit the suit is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another."

These findings and conclusions of the trial court are fully sustained by the following of our cases: *Doe v. Tenino Coal & Iron Co.*, 43 Wash. 523, 86 Pac. 938; *Carr v. Cohn*, 44 Wash. 586, 87 Pac. 926; *Goodfellow v. First Nat. Bank*, 71 Wash. 554, 129 Pac. 90, 44 L. R. A. (N. S.) 580; *Ritchie v. Trumbull*, 89 Wash. 389, 154 Pac. 816; and *Seattle Trust Co. v. Morgan*, 167 Wash. 567, 9 P. (2d) 1079.

■ The second point urged is that a stay of proceedings should have been granted pending the determination of the New York case brought by appellant Rosenbaum. Under finding XXXVI, which cannot now be disturbed, respondent in this action is not a defendant in the New York action. In that action, Rosenbaum seeks a personal judgment against the trust

company. In this action, respondent seeks a personal judgment on the same contract as is involved in the New York action. It is well settled here, and elsewhere, that a suit to enforce an express trust is a transitory action *in personam* and can be brought anywhere that jurisdiction may be had of the parties.

The fact that jurisdiction has been acquired in a subsequent case in one state during the pendency of another action in another state does not require the abatement of the later action. We agree with the trial judge in his tenth conclusion of law that for the lower court to grant a stay of proceedings of this case, pending the determination of the New York case, would be an abuse of discretion. That conclusion is fully sustained by our decision in *State ex rel. Milwaukee Lumber Co. v. Superior Court,* 147 Wash. 615, 266 Pac. 1054. See, also, 1 C. J. 83, § 110; p. 1161, § 417; and p. 1165, § 426.

 Appellants' third point is that respondent failed to deliver a marketable title. The main reason assigned by them in support of this proposition is based upon a noncompliance of the trust company with the Washington statutory provisions relating to foreign corporations.

The argument is involved and rather confusing. The Washington statutes concerned are Rem. Rev. Stat., §§ 3855, 3836-2, 3836-5, 3842 [P. C. §§ 4660, 4640-12, 4640-15, 4647], and of the trust act, Rem. Rev. Stat., §§ 3247, 3286-a and 3287. There is no provision in any of these statutes, nor in any statute of this state, that the contract entered into by a foreign corporation, not domesticated or not qualified, shall be void. The utmost the Washington statutes do is to provide for penalties on foreign corporations for noncompliance therewith.

The cases cited by appellants are not applicable, nor is 2 Restatement of the Law of Trusts, §§ 291, 292, 293

and 294. The uniform current of authority is that, under similar statutory provisions, a foreign corporation can take and hold the title to real property situated in a state other than its own; that its title can only be defeated by an action brought by the state for that purpose, and that, prior to such state action, the corporation can convey good title. The law is thus stated in American Restatement of the Law, Conflict of Laws, 266, § 179.

This court has said that our statutes recognize the right of foreign corporations to do business here when they have complied with the statutes relating to the filing of a certified copy of the charter and the appointment of an agent. Contracts entered into by such corporations have never been held to be void. *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67, 31 Pac. 327; *Fire Engine Co. v. Mt. Vernon,* 9 Wash. 142, 37 Pac. 287, 38 Pac. 80, 43 Am. St. 827. That principle has been reaffirmed in nine other cases, to and including *Seattle Trust Co. v. Morgan,* 167 Wash. 567, 9 P. (2d) 1079.

Furthermore, had the original deed tendered by respondent to The Newman Corporation been accepted, as found by the trial court, no purchaser would have questioned the grantee's title.

Assuming that the conveyance by the trust company to respondent was in violation of some Washington statute, or had the conveyance been made by the trust company to The Newman Corporation in violation of the statute, nevertheless, the conveyance tendered to The Newman Corporation would have passed good and marketable title as against every one, including the state.

The second reason assigned under the third point rests upon the assumption by appellants that time was of the essence of the contract; and that, since the

abstract did not show payment of the estate tax to the government, the grantee was free to rescind on the theory that time was of the essence.

While time was stipulated in the Townsend-Frost contract to be of its essence, because of repeated indulgences to Frost's assignees during a period of four and one-half years, not counting tax delinquencies, time ceased to be of the essence of the contract. It was so held in *Ready v. Sound Inv. Co.*, 64 Wash. 422, 116 Pac. 1093, and *Garrison v. Newton*, 96 Wash. 284, 165 Pac. 90, 4 A. L. R. 804.

A further argument is made by appellant that the title is defective because respondent had made a prior deed to the trust company. The finding of the trial court is conclusive that the deed from respondent to the trust company was placed in its vault and never recorded, the intent of the parties being not to presently invest title to the property in the trust company, but only to serve the purpose of protecting the interest of Mrs. McChesney and the children of John T. McChesney, deceased, should respondent die or become incapacitated; that the transaction was in accord with the practice of the trust company theretofore and thereafter in transactions of this character and was done in good faith and as a safeguard of the interest of the McChesneys and the trust company.

The law seems to be well settled that it is not necessary that the vendor should be the owner of the land which he sells. It does not necessarily follow that, because the grantors had made a deed to the tract of land, or any portion thereof, to some one else since the execution of the contract, they would not be able to fulfill the conditions of the contract when the time for its performance arrived. *Webb v. Stephenson*, 11 Wash. 342, 39 Pac. 952; *Wilson v. Fay*, 119 Wash. 88, 204 Pac. 800; *Thompson, Swan & Lee v. Schneider*, 127

Wash. 533, 221 Pac. 334; *Main v. Western Loan & Building Co.*, 167 Wash. 1, 8 P. (2d) 281.

■ The fourth point argued by appellants is that they are not liable because they are assignees of the vendee and did not specifically assume to pay the balance of the purchase price.

The Townsend-Frost contract contained this clause:

"All the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties."

In support of this contention, appellants cite: *Osburn v. Dolan*, 7 Wash. 62, 34 Pac. 433; *Bimrose v. Matthews*, 78 Wash. 32, 138 Pac. 319; *Hardinger v. Fullerton*, 165 Wash. 483, 5 P. (2d) 987.

In the *Bimrose* case, it was said that, unless there is an agreement to that effect, assumption of the debt by the assignee, on his, the assignee's, part, he could not be held. To the same effect is the *Hardinger* case, *supra*.

The trial court found in its twenty-fourth finding, now conclusive, that Rosenbaum himself and Rein expressly agreed to pay the balance of the purchase price, which brings this case within the rule stated in the cases relied upon by appellants. Cf. *Brewer v. Rosenbaum*, 183 Wash. 218, 48 P. (2d) 566.

■ The fifth point stated by appellants is that the contract was rescinded, and because thereof respondent cannot recover. In their argument, this question is treated as one of rescission actually accomplished; whereas, the issue tendered by them in this action was whether or not, under the circumstances, the court would decree a rescission. This distinction is adverted to in one of the decisions relied upon by appellants, *Empey v. Northwestern & Pac. Hypotheekbank*, 129 Wash. 392, 225 Pac. 226, in which we said:

"The action does not proceed upon the theory of a contract already rescinded, but proceeds on the theory that the jurisdiction of a court of equitable cognizance is needed to accomplish that end. It is therefore sufficient to show, as the plaintiffs did in this instance, a willingness to do equity."

This contention is therefore untenable.

Point six maintains that the tender of deeds and other documents subsequent to the date fixed for final payment was unavailing, and their admission in evidence was error. These tenders consisted of the following: The first was a deed from Townsend to The Newman Corporation; and, second, a deed from Townsend to Rosenbaum accompanied by a deed from the trust company to Rosenbaum. Both of these tenders were made in New York prior to the commencement of this action.

The third tender, made after the commencement of this action and prior to the trial, consisted of documents as follows: (a) A confirmatory deed from the Wilmington Trust Company to Townsend, reciting a conveyance by it and Mrs. McChesney to Townsend and a deed from Townsend to the Wilmington Trust Company; (b) resolution of the board of directors authorizing that confirmatory deed; (c) a warranty deed from Wilmington Trust Company to Rosenbaum; (d) certified copy of resolution of the directors of the trust company authorizing an exhibit; (e) resolution of board of directors ratifying the deed of the trust company to Rosenbaum; (f) a deed from the McChesney children to Townsend ratifying the Townsend-Frost contract, dated August 16, 1935; and (g) a deed from the McChesney children to Rosenbaum, which last was also joined in by the trust company.

All of these tenders were muniments of title and authorizations thereof and made before any tender was

made by appellants on the trial, either to account for rents, or deliver possession.

During the trial respondent tendered in open court, to cure alleged defects in the title, instruments showing the payment of the government tax, the re-recording of the Townsend-Frost contract, to correct an error in the recording of the notarial seal, and the several deeds tendered with the resolutions, at his own expense.

These tenders by respondent are in conformity with the principles announced in *Colcord v. Leddy*, 4 Wash. 791, 31 Pac. 320; *Hyde v. Heller*, 10 Wash. 586, 39 Pac. 249; *Skoog v. Columbia Canal Co.*, 63 Wash. 115, 114 Pac. 1034; *Morris v. Columbia Canal Co.*, 75 Wash. 483, 135 Pac. 238; *Wilson v. Korte*, 91 Wash. 30, 157 Pac. 47; *Wilson v. Fay*, 119 Wash. 88, 204 Pac. 800; *Henderson v. Miller*, 119 Wash. 362, 205 Pac. 1; *Sevigny v. O'Neill*, 154 Wash. 393, 282 Pac. 215; *Ballata v. Clise*, 160 Wash. 343, 295 Pac. 149; *Main v. Western Loan & Building Co.*, 167 Wash. 1, 8 P. (2d) 281.

The seventh point asserted by appellants is that the equities of the case are with them. On the contrary, as we said in *Rohne v. Horton*, 180 Wash. 428, 40 P. (2d) 134, there are no equities in favor of appellants. The equities are all against them.

We have considered all of the other errors assigned by appellants and consider none of them merit further, separate, discussion.

There being no conceivable error in the findings, unquestionably they sustain the conclusions of law and the decree.

The judgment is affirmed.

MILLARD, C. J., MAIN, BEALS, and BLAKE, JJ., concur.